**Senior Airman Ronald J. WEBB, Jr., United States Air Force, Petitioner,**

v.

**UNITED STATES [1], Respondent.**

**Misc. Dkt. No. 2009–01(pet).**

U.S. Air Force Court of Criminal Appeals.

20 March 2009.

---

1. Consistent with his position that he is no longer a member of the Air Force, the petitioner filed his action as "Mr. Webb." He also styled his complaint as against the general court-martial convening authority, the special court-martial convening authority, and the military judge. The Court hereby substitutes the United States for the individually named respondents.

Appellate Counsel for the Petitioner: Colonel Nikki A. Hall and Captain Michael A. Burnat.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Major Jeremy S. Weber, and Captain Coretta E. Gray.

Before FRANCIS, Senior Judge, HEIMANN, and THOMPSON, Appellate Military Judges.

**FRANCIS, Senior Judge:**

Multiple charges were preferred against the petitioner on 11 December 2008, with an additional charge preferred on 19 December 2008. By order of 24 December 2008, all charges were referred to trial by general court-martial. At the start of his trial on 5 January 2009, prior to entering pleas, the petitioner moved to dismiss all charges and specifications, arguing that he was discharged from the Air Force effective 23 October 2008 and that the court-martial therefore lacked *in personam* jurisdiction. After an evidentiary hearing on the issue, the military judge denied the motion. The petitioner subsequently filed with this Court a petition for extraordinary relief, seeking a writ of mandamus ordering the dismissal of all charges and specifications.[2] We deny the petition.

*Background*

On 22 October 2002, the petitioner entered the Air Force with a six-year active duty service commitment. Based upon his commitment, his normal Expiration of Term of Service (ETS) would have been 23 October 2008. From entry on active duty until the events here at issue, he remained in an active duty status, with no breaks in service.

On 16 July 2008, the petitioner was questioned by security forces investigators for suspected absence without leave (AWOL), in violation of Article 86, UCMJ, 10 U.S.C. § 886. In conjunction with that investigation, he consented to a urinalysis, which ultimately reported positive for methamphetamine. On 25 August 2008, the petitioner was questioned by security forces investigators for suspected wrongful use of methamphetamine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.

Based on those allegations, the petitioner's commander determined that court-martial was appropriate. Acting through the unit first sergeant, the commander advised the servicing staff judge advocate (SJA) that he

---

2. The petitioner also requested that this Court order a stay of all further court-martial proceedings pending our ruling on his petition for extraordinary relief. However, we note that trial on the merits, for reasons apparently unrelated to this petition, recessed after the motions hearing and is not scheduled to resume until 30 March 2009. That delay, and the ruling set forth in this decision, renders the stay request moot.

wanted the petitioner placed on administrative hold for that purpose.

In accordance with the commander's request, the SJA on 15 October 2008 issued a memorandum addressed to the Air Force Personnel Center (AFPC), requesting that the petitioner be involuntarily extended on active duty. The memorandum indicated the petitioner was a "Code 17", meaning he was under investigation and not to be separated. It also indicated that the extension was required because the petitioner was "under investigation with a view toward court-martial" and was being taken "in anticipation of the preferring of charges." The memorandum was transmitted by e-mail to the servicing Military Personnel Flight (MPF) the same day. The e-mail transmission re-iterated the request to place the petitioner "on admin hold", asserting that "[h]e is currently facing court-martial charges that we hope to prefer this month." On 16 October 2008, the MPF forwarded the SJA memorandum by e-mail to AFPC.

On 20 October 2008, the petitioner, who had already started out processing from the unit in anticipation of separating from the Air Force at the end of his term of service, talked to the unit first sergeant. During that conversation, the first sergeant told the petitioner that he was on administrative hold, and directed him to stop all out-processing actions and go back to work.

All members separating from the Air Force are required to complete certain out-processing actions, which are tracked through an on-line checklist. The petitioner, after being told by his first sergeant to stop all out processing, nonetheless visited the MPF separations office on 22 October 2008. However, he never completed all of the out-processing actions required by the on-line checklist. Specifically, he did not out process through either his unit orderly room or the MPF. Had the petitioner attempted to complete those actions, he would have been prevented from separating because he was on administrative hold.

On 24 October 2008, AFPC mailed the petitioner a Department of Defense (DD) Form 214, *Certificate of Release or Discharge from Active Duty*. The form reflected

a discharge date of 23 October 2008. On 12 November 2008, the Defense Finance and Accounting Service (DFAS) issued the petitioner his final pay.

On 21 November 2008, the first sergeant discovered that the petitioner, who was at the time assigned to a geographically separated unit, was missing. Efforts to locate him proved unsuccessful, and he was subsequently placed in deserter status.

Also on 21 November 2008, the local MPF queried AFPC about the petitioner's military status. On 24 November 2008, AFPC voided the previously issued DD Form 214. On 5 December 2008, the petitioner was apprehended in Chicago and was subsequently returned to military control.

*Discussion*

■ This Court has authority to issue extraordinary writs when "necessary or appropriate in aid of [our jurisdictional mandate]." *Andrews v. Heupel*, 29 M.J. 743, 746 (A.F.C.M.R.1989) (quoting 28 U.S.C. § 1651(a)); *see also Smith v. Vanderbush*, 47 M.J. 56 (C.A.A.F.1997) (writ of prohibition appropriate where Army took no action to halt pending discharge of soldier facing court-martial, and soldier subsequently legally discharged). However, "issuance of an extraordinary writ is a drastic remedy which should only be invoked in those situations which are truly extraordinary. An extraordinary writ is not to be a substitute for an appeal even though hardship may ensue from delay and perhaps an unnecessary trial." *Andrews*, 29 M.J. at 746–47. "Traditionally, extraordinary writs have been used in aid of appellate jurisdiction at common law and in the federal court system 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction.'" *Id.* at 747 (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382, 74 S.Ct. 145, 98 L.Ed. 106 (1953)). Petitions for extraordinary relief based on assertions that a member pending trial has been discharged and is therefore no longer subject to court-martial jurisdiction are appropriate for consideration under this authority. *Vanderbush*, 47 M.J. 56; *see also Wickham v. Hall*, 12 M.J. 145 (C.M.A.1981) (member al-

leged court-martial lacked jurisdiction to try her for fraudulent separation).

We review jurisdictional challenges de novo, accepting the military judge's findings of fact unless they are clearly erroneous or are not supported by the record. *United States v. Hart*, 66 M.J. 273, 276 (C.A.A.F. 2008). The military judge's denial of the petitioner's motion to dismiss set forth extensive findings of fact, which are amply supported by the evidence and are not clearly erroneous. We accordingly accept such findings for purposes of this review.

■ As the petitioner correctly notes, "[i]t is black letter law that *in personam* jurisdiction over a military person is lost upon his discharge from the service, absent some saving circumstance or statutory authorization." *United States v. Howard*, 20 M.J. 353, 354 (C.M.A.1985). However, the mere expiration of a member's term of service (ETS) does not automatically equate to a "discharge" or a resulting loss of military jurisdiction under this rule. "[M]embers of the armed forces do not have an unconditional right to be discharged upon their ETS." *Vanderbush*, 47 M.J. at 57. Military jurisdiction continues to exist over those who are "awaiting discharge after expiration of their terms of enlistment." Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1); *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F.2006).

■ Regardless of whether or not a member's ETS has passed, if actual discharge from the military has not yet occurred, court-martial jurisdiction attaches "when action with a view to trial of that person is taken." Rule for Courts–Martial (R.C.M.) 202(c)(1). For purposes of this rule, the *Manual for Courts–Martial, United States* (2008 ed.) specifies that actions taken with a view toward trial "include: apprehension; imposition of restraint, such as restriction, arrest, or confinement; and preferral of charges." R.C.M. 202(c)(2). However, that list of examples is not exclusive, and other definitive actions taken by military authorities "with a view to trial" also trigger attachment of court-martial jurisdiction. *United States v. Self*, 13 M.J. 132, 138 (C.M.A.1982) (quoting *United States v. Wheeley*, 6 M.J. 220, 222 (C.M.A.1979)). Criminal investigations initi-

ated against a member with a view toward trial are sufficient. *United States v. Lee*, 43 M.J. 794, 797 (N.M.Ct.Crim.App.1995), *rev. denied*, 44 M.J. 262 (C.A.A.F.1996). Placing a valid legal hold on a member before the effective date of discharge, if done with a view toward trial, is also sufficient. *United States v. Williams*, 53 M.J. 316, 317 (C.A.A.F.2000).

■ Applying the above to the facts of this case, two actions initiated by Air Force authorities with respect to the petitioner triggered the attachment of court-martial jurisdiction.

First, criminal investigations were initiated against the petitioner by security forces personnel in July and August 2008 for allegations of AWOL and wrongful use of methamphetamine. Due to the nature of those offenses, the petitioner was the only suspect, and both offenses were ultimately included in the numerous charges later preferred against him.

Second, and most significantly, the SJA, acting at the direction of the petitioner's commander, issued a memorandum on 15 October 2008 placing the petitioner on administrative hold. The memorandum specifically indicated that it was issued "in anticipation of the preferring of charges" and that the petitioner was "under investigation with a view toward court-martial", requested a 90 day extension of the petitioner's date of separation, and indicated that if court-martial action was not completed before 12 January 2009, further extensions would be requested. The memorandum was directed to and, by transmission from the local personnel office on 16 October 2008, was electronically sent to the AFPC office of Separations, which is responsible for ensuring that such administrative hold determinations are properly reflected in the system.

The SJA's administrative hold memorandum was issued under authority of, and in accordance with, applicable Air Force regulatory guidance. Air Force Instruction (AFI) 36–3208, *Administrative Separation of Airmen* (9 Jul 2004), governs retention of airmen beyond their ETS for purposes of criminal prosecution. In this regard, the

pertinent portions of the AFI provide as follows:

2.1. **Eligibility for Separation.** Airmen are absolutely entitled to separation from active duty at ETS *unless there is a specific authority for their retention. . . .*

2.1.1. As a rule, separate airmen on the date ETS occurs, *but their separation is not automatic. They are members of the Air Force until they are separated by administrative action.* Retain airmen only when their enlistments are extended by law *or when one of the conditions described in paragraphs 2.3 through 2.7 exists.*

. . . .

2.4. **Retention for Action by Court–Martial.** For information about how incomplete court-martial action affects separation from active duty, see paragraph 1.9. These restrictions also apply to ETS separations. This paragraph authorizes the retention of airmen *beyond ETS* in *anticipation* of the preferring of charges. *The SJA determines what type of appropriate action is sufficient to authorize retention pending the preferring of charges.* If there is sufficient time, the Staff Judge Advocate (SJA) or a member of the SJA's staff will notify the MPF separations unit in writing to involuntarily extend the member's ETS.

2.4.1. Verbally notify when time does not permit written notification, but written confirmation of the verbal notice should be provided the MPF within 5 work days.

AFI 36–3208, ¶¶ 2.1–2.4.1 (emphasis added).

The plain import of this language is twofold. First, consistent with the legal principles discussed above, the AFI allows a member to be held beyond his ETS for court-martial purposes even if charges have not yet been preferred. Second, the SJA has the authority to determine whether or not a member will be placed on administrative hold, thereby preventing his discharge. This interpretation is supported by the testimony

of three personnel specialists who testified at the motions hearing concerning the impact of an administrative hold memorandum signed by the SJA. All three, including the AFPC Chief of Separations and Policy, indicated that the SJA has full authority to place members on administrative hold and that once such a determination is made, the personnel community, including AFPC, may not override that determination.[3]

The memorandum issued by the SJA in this case, and delivered the next day by the local personnel office to AFPC, met the requirements of the regulation for placing a member on administrative hold. In reaching this determination, we find no merit in the petitioner's contention that because the SJA's memorandum, in advising AFPC of the administrative hold determination, "requested" extension of his ETS, it was not a "determination" that he be placed on hold. The use of polite language in the SJA's hold memorandum does not negate its intent and effect. It still operated, under the terms of AFI 36–3208, to place the petitioner on administrative hold.

We have also considered, but find no merit in, the petitioner's contention that the memorandum is void because it failed to reference the correct paragraph of AFI 36–3208 as the basis for the administrative hold. Rather than citing to paragraph 2.4 of AFI 36–3208, referenced above, as the basis for placing the petitioner on hold, the memorandum cited paragraph 1.9, which provides separation guidance *after* charges have been preferred. The error is one of form only, not substance. Citing to the wrong numerical provision in no way reduced the authority of the SJA under AFI 36–3208, ¶ 2.4. Further, the memorandum specifically indicated that it was issued "in anticipation of the preferring of charges" and that the member was still "under investigation with a view toward court-martial", thereby bringing it squarely within the authority of AFI 36–3208, ¶ 2.4.

---

**3.** Authority to hold a member beyond his Expiration of Term of Service (ETS) date is not the same as authority to *change* the ETS date in the personnel system. The cited regulatory provisions clearly vest authority for the former in the staff judge advocate, through issuance of an administrative hold. The latter is an administrative action reserved for the Air Force Personnel Center.

Finally, we find no merit in the petitioner's contention that a different result is dictated by policy guidance issued by the commander, AFPC, prior to the SJA's administrative hold memorandum. The petitioner points in this regard to an AFPC publication, *Personnel Services Delivery Handbook (Guide)*, 30 May 2008.[4] The handbook contains the following language, highlighted in bold typeface: *"Retention beyond ETS*—Members may not be held involuntarily past ETS/DOS unless court-martial charges have been preferred."[5] That language is in direct conflict with the regulatory provisions outlined above, which specifically provide that a member can be extended past his ETS "in *anticipation* of preferring charges", i.e., before charges have actually been preferred. AFI 36–3208, ¶ 2.4 (emphasis added.) Having considered the conflict between the language of the handbook and the underlying AFI, we determine that the AFI is controlling.

We start with the observation that the quoted language from the handbook is not an accurate statement of the law governing *in personam* jurisdiction over members whose ETS date has passed. Pursuant to R.C.M. 202(c) and the case law referenced above, the Air Force clearly has the legal authority to involuntarily hold a member past his ETS even though court-martial charges have not yet been preferred.

Nor do we find any convincing evidence that the Secretary of the Air Force, as a matter of policy, has voluntarily elected to place more stringent restrictions on the Air Force's ability to hold members past their ETS than would otherwise be required by law.

First, although the quoted handbook language, standing alone, seems clear, it becomes ambiguous when considered in context. The paragraph that contains the quoted language also indicates that SJAs placing members on hold should use "Attachment 5, Involuntary Retention Beyond ETS" as a guide. Attachment 5 to the *Guide* is a sample hold memorandum virtually identical in format to that used by the SJA in this case to place the petitioner on administrative hold.[6] Paragraph 1 of the sample memorandum offers SJAs two potential bases for the hold: "in anticipation of the preferring of charges" (as in this case) or "to complete court-martial action." Similarly, paragraph 2 offers the following language options: "currently under investigation with a view toward court-martial" (as in this case) or "the court-martial is docketed." The options embodied within Attachment 5 to the *Guide* are consistent with the language of AFI 36–3208, allowing a member to be held beyond his or her ETS even if charges have not yet been preferred.

■ Second, even if the handbook language was not ambiguous, it cannot override the terms of the higher level AFI. AFI 33–360, *Publications and Forms Management,* Table 2.1 (18 May 2006), effectively establishes a hierarchical order of precedence for Air Force regulatory materials. Item # 4 of Table 2.1 indicates that "AFIs are orders of the Secretary of the Air Force" that "direct action, ensure compliance, and/or give detailed procedures to standard actions Air Force-wide." Handbooks, included considerably farther down Table 2.1 at Item # 15, are in contrast deemed merely "reference books of a particular subject or a compilation of factual data and instructional material not subject to frequent revision." Guidance published as "orders of the Secretary of the Air Force" takes precedence over "reference books" published by lower level entities, including AFPC.[7]

4. Submitted as an attachment to the petitioner's brief. Since the petitioner filed his brief, a new version of the *Personnel Services Delivery Handbook (Guide)* was published, on 13 March 2009. <http://ask.afpc.randolph.af.mil/psd>.

5. The 13 March 2009 version of the *Guide* reads "*Retention Beyond ETS*—Members may not be held involuntarily past ETS/DOS unless court martial charges have [been] or are anticipated to be preferred."

6. In the current version of the *Guide,* this attachment is now "Attachment 10."

7. Our analysis of the secondary reference material as a "handbook" is done with recognition that the title of the material also contains the word "guide." Air Force Instruction (AFI) 33–360, *Publications and Forms Management,* Table 2, Item # 6 (18 May 2006), addresses "Guidance Memorandums [sic]", which carry more authority than "handbooks." However, the material at

Having found that court-martial jurisdiction attached prior to the petitioner's ETS, we must also consider whether the Air Force subsequently severed that jurisdiction by discharge of the petitioner. It is clear that "a valid discharge can operate as a termination of court-martial *in personam* jurisdiction." *Harmon,* 63 M.J. at 101 (citing *Vanderbush,* 47 M.J. at 58). However, under the facts presented in this case, we conclude the petitioner was not validly discharged from the Air Force.

■ Resolution of this issue necessarily requires that we first determine what actions were required to effectuate a valid discharge of this petitioner from the Air Force. The respondent, relying on *United States v. King,* 27 M.J. 327, 329 (C.M.A.1989) and its progeny, argues that "discharge" of the petitioner could occur only upon completion of three requirements: 1) delivery of a valid certificate of discharge; 2) a final accounting of pay; and 3) completion of the administrative clearance process mandated by the Air Force for separation. We do not agree.

As noted by the petitioner, *King* and the other cases cited by the respondent for application of the three-part test all involved military members who were, prior to their courts-martial, being discharged from the military early, *before* their normal ETS. *See e.g. Hart,* 66 M.J. at 274 (disability separation); *Harmon,* 63 M.J. at 99 (administrative separation for drug abuse); *Williams,* 53 M.J. at 317 (physical evaluation board separation as unfit for duty); *United States v. Melanson,* 53 M.J. 1, 2 (C.A.A.F.2000) (early involuntary separation for drug abuse). The rationale of these "early out" cases is that the specified three-part test for discharge is mandated by a combined reading of 10 U.S.C. §§ 1168(a), 1169. *Hart,* 66 M.J. at 275–76. Section 1168(a), imposes only two requirements: a discharge certificate and a

final accounting of pay. 10 U.S.C. § 1168(a). It makes no reference to early separations or to the need to complete an administrative clearing process. The latter requirements stem from 10 U.S.C. § 1169, which provides in pertinent part as follows: "No regular enlisted member of an armed force may be discharged *before his term of service expires, except . . . as prescribed by the Secretary concerned."* 10 U.S.C. § 1169 (emphasis added). The petitioner was not being administratively separated from the Air Force early, but solely because of his ETS. As such, 10 U.S.C. § 1169, and the resulting requirement, established by the *King* line of cases, that discharge only occurs upon, inter alia, completion of the service administrative clearing process, does not apply, at least as a stand alone requirement.[8] Thus, for ETS cases, we look only to whether the mandate of 10 U.S.C. § 1168(a) has been met, i.e., whether the petitioner received a valid certificate of discharge and a final accounting of pay.

The petitioner's receipt of his final pay is not in issue. Evidence presented at the motions hearing conclusively established that on 12 November 2008, DFAS deposited the petitioner's final pay directly into his bank account via an electronic funds transfer. It is also undisputed that on 24 October 2008, a "separations technician" at AFPC mailed the petitioner a discharge certificate, bearing an effective date of 23 October 2008. The DD Form 214 appears on its face to be correct and nothing within the document purports to preclude it from taking effect on the date indicated.

Notwithstanding the above, we find that the petitioner's DD Form 214 was issued in violation of applicable Air Force regulatory guidance and was therefore without legal effect. Accordingly, the petitioner was not

issue does not fit the format specified by the AFI for guidance memoranda and so does not appear intended to fall into that category. In any case, it is clear that guidance memoranda issued by a subordinate organization are also lower in precedence than AFIs, issued at the order of the Secretary.

**8.** That is not to say, however, that failure to complete the administrative out-processing re-

quirements imposed by the Air Force is of no consequence. As further discussed below, because the Air Force administratively requires that members undergo a certain clearance process before they are allowed to separate, failure to complete that process is relevant to whether or not a discharge certificate, issued before the required process is complete, is valid.

legally "discharged" from the Air Force and remains subject to military jurisdiction.

For a DD Form 214 to be valid, it necessarily must be issued in accordance with regulatory guidance published under statutory authority granted to and implemented by the Secretary of the Air Force. The legal authority of the AFPC separations technician to issue a discharge certificate to the petitioner under the circumstances of this case was effectively circumscribed in two respects.

First, the Secretary of the Air Force, by regulation, has dictated that a discharge is only effective upon, inter alia, "receipt of a [DD Form 214] *issued under proper authority*" and on the member's "*completion of the clearing process established by the Air Force.*" AFI 36–3208, ¶ 1.11.4. (emphasis added.) The regulation makes no distinction in this regard between early discharge cases and ETS discharges. The result of this provision is that although completion of the Air Force clearing process is not a stand alone requirement within the sense of *King*, it is effectively a consideration in determining whether a DD Form 214, issued to a member who has not undergone the required clearing process, is "issued under proper authority", and is therefore a "valid" discharge certificate. Here, the evidence presented at the motions hearing conclusively established that part of the clearing process established by the Air Force is that the member must final out-process through both his unit orderly room and the installation MPF. Had the petitioner done so, he would have been prevented from separating. He did neither.

Second, as indicated by our prior analysis of the SJA's administrative hold memorandum, the Secretary of the Air Force, through AFI 36–3208, ¶ 2.4, has given SJAs the discretionary authority to place members on administrative hold, effectively precluding their discharge at ETS. The SJA, at the direction of the petitioner's commander, did so in this case. Further, as attested to by each of the personnel specialists who testified at the motions hearing, AFPC cannot override that discretionary determination once made.

Based on the above, and most particularly the SJA's placement of the member on ad-ministrative hold, the separations technician's clerical act of issuing the DD Form 214 was in direct violation of the limitations imposed by the Secretary of the Air Force through applicable regulations and therefore exceeded the technician's authority. It was also in direct conflict with the intent of the petitioner's commander, a key factor in determining when discharge occurs. *Harmon*, 63 M.J. at 102. Because the discharge certificate was issued in contravention of requirements established by order of the Secretary of the Air Force, and against the intent of the petitioner's commander, it was without legal effect and therefore void or voidable. *See United States v. Wilson*, 53 M.J. 327, 333 (C.A.A.F. 2000); *United States v. Garvin*, 26 M.J. 194, 195–96 (C.M.A.1988); *Wilson v. Courter*, 46 M.J. 745, 749 (A.F.Ct.Crim.App.1997), *pet. denied*, 47 M.J. 80 (C.A.A.F.1997). The petitioner therefore remained subject to military jurisdiction.

In reaching this determination, we find, as did the military judge, that the facts of this case are distinguishable from *Vanderbush*. In that case, our superior court found that a discharge certificate issued after the member had been arraigned on court-martial charges was sufficient to sever jurisdiction. The *Vanderbush* court relied heavily on the lack of evidence in the record to challenge the validity of the discharge certificate, including lack of any administrative hold on the accused, and the commander's failure to take any action to stop the pending discharge. Neither factor is present here. On the contrary, the petitioner's DD Form 214 was issued in direct violation of the administrative hold initiated by the SJA before ETS, at the specific request of command.

We also find unpersuasive the petitioner's assertion, relying on *United States v. Cole*, 24 M.J. 18, 27 (C.M.A.1987) (citing *United States v. Howard*, 20 M.J. 353 (C.M.A.1985) (Cox, J., concurring)), that even if the DD Form 214 was "mistakenly" issued, it was still sufficient to sever jurisdiction. As previously made clear by this Court in *Courter*, 46 M.J. at 749, there is a significant difference between an action mistakenly taken by someone who possesses the authority to take the action and the *ultra vires* act of a personnel

clerk who, because of limitations effectively imposed on her authority by the lawful, discretionary acts of others, simply lacked competent authority to issue the discharge certificate.

### Conclusion

Based on the foregoing, the petitioner's petition for a Writ of Mandamus directing dismissal of all charges and specifications is **DENIED,** without prejudice to the petition- er's ability to raise the issue of jurisdiction in any subsequent post-trial appeal.

Judge THOMPSON did not participate.