# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

| | | | |
|---|---|---|---|
| **UNITED STATES,** | ) | **Misc. Dkt. No. 2014-11** | |
| **Petitioner** | ) | | |
| | ) | | |
| **v.** | ) | | |
| | ) | **ORDER** | |
| **Airman First Class (E-3)** | ) | | |
| **MEALOHA NANI KAWE RUSSELL,** | ) | | |
| **USAF,** | ) | | |
| **Respondent** | ) | **Panel No. 2** | |

TELLER, Judge:


The Government filed an interlocutory appeal under Article 62, UCMJ, 10 U.S.C. § 862, in this matter. The Government challenges the military judge's ruling to dismiss the Charge and its Specification for lack of personal jurisdiction over the appellee.


## *Background*[1]


The appellee in this case was pending voluntary early separation from the Air Force when evidence came to light that she may have used ecstasy while on active duty in 2012. The appellee had submitted a request for a voluntary separation due to pregnancy on or about 25 July 2013. On 31 July 2013, the separation authority, Brigadier General Bradley Spacy, then Commander of the 81st Training Wing, approved the appellee's request. On 3 October 2013, the appellee was issued an AF IMT 100,[2] *Request and Authorization for Separation*, ordering her separation from active duty, effective 1 December 2013. On 14 November 2013, the appellee completed all out-processing actions and began her terminal leave, which was scheduled and approved for 14 November 2013 through 30 November 2013. On approximately 18 November 2013, the Air Force Office of Special Investigations (AFOSI) began the investigation of the appellee that led to the Charge in the present case.

---

[1] This background section is provided for context leading up to the military judge's ruling at issue. We make no specific findings of fact in this section to support our holding, as we lack fact-finding authority in this interlocutory appeal. The matters in this section are drawn from the military judge's findings of fact at trial. With the exception of actual delivery of the certificate of discharge, the parties have not asserted any of these facts are unsupported by the record.

2 An "IMT," or Information Management Tool, is equivalent to a form.

Upon the recommendation of AFOSI, the appellee's squadron commander initiated a series of actions intended to retain the appellee on active duty. On or about 21 November 2013, the acting unit first sergeant informed the appellee that she would be placed on administrative hold and that she was required to return to duty. The appellee returned to duty as directed. Between 21 November 2013 and 27 November 2013, the first sergeant exchanged e-mails with a paralegal in the base legal office about placing the appellee on administrative hold. On 27 November 2013, the paralegal sent a memorandum to the base personnel office requesting that the appellee and three other individuals be placed on administrative hold in accordance with Air Force Instruction (AFI) 36-2110, *Assignments*, Table 2.1, Rule 10, Code 17 (22 September 2009) (incorporating changes through 8 June 2012). The memorandum did not mention the appellee's pending separation, nor did it request that her date of separation be extended or that her discharge orders be revoked.

While the squadron commander and base legal office were taking action to try to retain the appellee on active duty, the processes set in motion by her approved separation continued. On 26 November 2013, a finance final separation worksheet was prepared in anticipation of the appellee's separation. On 3 December 2013, the appellee's Department of Defense Form (DD Form) 214, *Certificate of Release or Discharge from Active Duty*, was signed, reflecting her discharge from the Air Force with an honorable discharge. On 4 December 2013, at 0436 hours, the appellee received an e-mail from the Total Force Service Center making her DD Form 214 immediately available to her online. On the same day, a copy of the DD Form 214 was mailed to the appellee, and she received her final separation pay as a direct deposit into her bank account.

When the unit learned that the appellee had been separated, they took action intended to rescind the separation. The unit first sergeant learned of the separation from the appellee on 3 December 2013. He contacted the base personnel office in an attempt to determine why the appellee was no longer in the Air Force personnel system. The base personnel office in turn contacted the Air Force Personnel Center (AFPC). The unit was informed that the type of administrative hold placed on the appellee did not affect her previously established date of separation. A noncommissioned officer from the base personnel office conducted research on the issue and advised the legal office that the proper procedure for extending the appellee beyond her separation date required sending an extension request, signed by the Staff Judge Advocate (SJA), to AFPC. On 4 December 2013, the SJA signed a memorandum for the AFPC Separations Branch, requesting that the appellee retroactively be extended for 90 days past her approved date of separation in anticipation of trial, pursuant to AFI 36-3208, *Administrative Separation of Airmen*, ¶ 2.4 (9 July 2004) (incorporating changes through 2 July 2013). The SJA's memorandum was forwarded via e-mail to AFPC on 5 December 2013. Later that day, AFPC responded to the base personnel office via e-mail, stating "The Med Hold/Retention Beyond ETS on this member has been processed. If the member had a separation, the separation has been cancelled and all orders have been revoked."

On 19 December 2013, the appellee received an AF IMT 973, *Request and Authorization for Change of Administrative Orders*, canceling her separation orders. The appellee returned to her duty station on 6 January 2014 under threat of arrest and/or confinement by her former command and the base legal office.

On 30 June 2014, the squadron commander preferred one charge and specification of wrongful use of ecstasy on divers occasions between on or about 1 May 2012 and on or about 31 October 2012. The convening authority referred the Charge and Specification for trial the same day.

*Jurisdiction*

Military appellate courts are courts of limited jurisdiction; prosecution appeals are not favored and are available only upon specific statutory authorization. *United States v. Wuterich*, 67 M.J. 63, 70 (C.A.A.F. 2008) (citations omitted). This court has jurisdiction to hear this appeal under Article 62(a)(1)(A), UCMJ, which authorizes the Government to appeal "[a]n order or ruling . . . which terminates the proceedings with respect to a charge or specification" in a court-martial where a punitive discharge may be adjudged.

*Standard of Review*

"When an accused contests personal jurisdiction on appeal, we review that question of law *de novo*, accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported in the record." *United States v. Hart*, 66 M.J. 273, 276 (C.A.A.F. 2008) (quoting *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000)).

*Discussion*

The Government argues that the appellee's separation was incomplete, either because the e-mail notification by AFPC that her DD Form 214 was available for download was not sufficient to constitute delivery, or even if delivered, the certificate was invalid because it was contrary to her squadron commander's intent. We do not reach those issues because we find that the squadron commander's actions, and those of the SJA, were insufficient to invalidate the voluntary separation ordered by the separation authority and the appellee's receipt of the DD Form 214 in the mail terminated personal jurisdiction over her.

*Voluntary Separation Compared to Expiration of Term of Service*

This case concerns the voluntary separation of an Airman prior to the expiration of her term of service (ETS). "As a general matter, members of the armed forces do not have an unconditional right to be discharged upon their ETS. The authority to retain servicemembers past their period of obligated service for purposes of trial by court-martial is a longstanding feature of military law." *Smith v. Vanderbush*, 47 M.J. 56, 57–58 (C.A.A.F. 1997). In the Air Force, the authority to retain someone beyond their ETS for action by court-martial is governed by AFI 36-3208, ¶ 2.4. The SJA or members of the SJA's staff may extend an Airman's ETS by notifying the separations unit in writing or verbally, if time does not permit. Separation upon reaching an ETS is not automatic. *See* AFI 36-3208, ¶ 2.1.

By contrast, an Airman who has been lawfully approved for voluntary separation prior to expiration of her term of service has been granted the right to separate, albeit subject to conditions, by a commander or other official authorized to do so. Once such a separation is pending, unit commanders are required to "report serious misconduct to the separation authority at once," and he "may withhold execution of a separation and, upon review of additional evidence, may withdraw approval of a voluntary or involuntary separation." AFI 36-3208, ¶ 1.14. Furthermore, the instruction states "[d]ischarge authorities may withdraw an approved voluntary separation that has not been executed when reasons exist that make withdrawal in the best interest of the Air Force. The separation authority must give written notification giving reason(s) for withdrawal to the member and the [Military Personnel Flight] separations section." AFI 36-3208, ¶ 3.5.1.

The distinction between extending an ETS and withholding the execution of a pending separation is a matter of substance rather than merely a matter of form. In AFI 36-3208, the Secretary of the Air Force authorizes only senior commanders to act as separation authorities.[3] This restriction to senior levels of command implies that the separation authority will use his judgment and experience in deciding whether the quality of the evidence and the nature of the misconduct justifies delay or termination of the separation. The facts of this case provide a good example. While drug use certainly constitutes serious misconduct, once an Airman enters terminal leave status, the decision to use scarce Air Force resources to return that Airman to duty and incur the costs of a

---

[3] Commanders who may exercise separation authority include: general officers who command units; commanders of divisions or wings; commanders who exercise special or general court-martial jurisdiction; and others specifically designated by Headquarters Air Force Military Personnel Center, Airman Separations Section. Air Force Instruction (AFI) 36-3208, *Administrative Separation of Airmen*, ¶ 1.1.2 (9 July 2004) (incorporating changes through 2 July 2013).

trial calls for deliberation and judgment. The Secretary has limited the authority to make such decisions accordingly.[4]

*Validity of Discharge*

Subject to certain exceptions not applicable here, a court-martial does not have jurisdiction over persons lawfully discharged from the armed forces. *Vanderbush*, 47 M.J. at 59. "A servicemember will not be considered to have been lawfully discharged, however, unless: (1) the member received a valid discharge certificate or a certificate of release from active duty, such as a [DD Form 214]; (2) the member's 'final pay' or 'a substantial part of that pay' is 'ready for delivery' to the member; and (3) the member has completed the administrative clearance process required by the Secretary of the service of which he or she is a member." *Melanson*, 53 M.J. at 2 (citations omitted) (quoting 10 U.S.C. § 1168). The military judge found that the appellee received her final pay on 4 December 2013 and that she completed out-processing on 14 November 2013. Those findings are fairly supported by the record, are not clearly erroneous, and are not disputed by the Government on appeal. Accordingly, the only issue was whether the appellee received a valid certificate of discharge.

There is no dispute that appellee received a DD Form 214. Both the Government and the appellee attached a copy to their written motions at trial. The DD Form 214 reflects an effective date of 1 December 2013 and bears an electronic signature dated 3 December 2013.[5]

The Government contends that the DD Form 214 was invalid because it was issued contrary to the squadron commander's intent. In support of this proposition, the Government cites *United States v. Webb*, 67 M.J. 765 (A.F. Ct. Crim. App. 2009). In *Webb*, this court found that by failing to give effect to an SJA's valid request to extend an Airman's ETS, AFPC violated regulations, rendering the certificate of discharge invalid. In light of the procedural posture of this case, *Webb* leads to the opposite conclusion here—that the appellee's certificate was valid. In this case, AFPC processed

---

[4] Separations for pregnancy or childbirth also appear to have a unique decision-making status as compared to other voluntary separations. According to the instruction, the separation authority is authorized to approve an Airman's application for this type of separation, and he/she can also approve that Airman's request to later withdraw the application. AFI 36-3208, ¶ 3.5, 3.17. If the separation authority wants to deny either request, however, the package must be sent to the Airman Separations Section at Headquarters Air Force Military Personnel Center. *Id.*

[5] Although we need not reach the issue in this case, the court remains skeptical of the Government's assertion that former servicemembers who begin terminal leave without a Department of Defense Form 214, *Certificate of Release or Discharge from Active Duty*, remain indefinitely subject to court-martial jurisdiction unless and until they have physical custody of their certificate. *See United States v. Melanson*, 53 M.J. 1, 4 (C.A.A.F. 200) (finding that administrative discharge was effective at 2400 hours on date of discharge despite appellant receiving only a "courtesy copy" of the certificate); *United States v. Hart*, 66 M.J. 273, 277 (C.A.A.F. 2008) (Effron, C.J., dissenting).

an approved separation from a duly authorized separation authority.  According to AFI 36-3208, ¶ 2.14, only the separation authority (or a staff officer delegated the authority in writing) could withhold execution of that separation.[6]  While the SJA's memorandum that eventually reached AFPC would have been effective in extending an ETS and preventing a separation on that basis, the SJA had no authority to direct AFPC to withhold execution of the approved separation.

The Government also cites to this court's prior holding in *United States v. Park*, Misc. Dkt. No. 2012-11 (A.F. Ct. Crim. App. 2012).  *Park* involved a similar fact pattern to the instant case.  An Airman who had been approved for early separation was implicated in suspected misconduct.  The group commander initiated an administrative hold that did not prevent that appellee's DD Form 214 from being issued and posted electronically.  In that case, however, the appellee had not received his final pay.  Accordingly, this court, analogizing to *Hart*, held that the requirements for separation had not been met, and that the Air Force retained court-martial jurisdiction over the appellee.  *Id.* at 16.  In *Park*, we also discussed the appellee's argument that the legal office improperly interfered with his established date of separation by requesting his final pay be withheld.  That part of the opinion, however, was not essential to our holding and therefore constitutes dicta.  To the extent it suggests an SJA has authority under AFI 36-3208 to direct that the execution of an approved voluntary separation be withheld, we do not find it persuasive and decline to apply that rationale in this case.

We find the other cases cited by the Government similarly inapposite.  Instead, we find the court's reasoning in *Vanderbush* persuasive.  "The issue here is not whether the [Service] had authority under the Constitution, the Uniform Code of Military Justice, or the Manual for Courts-Martial to retain [the member] on active duty through the period of trial, sentence, and review.  [Service] officials did have that authority, but, as in *Howard*, they did not do so."  *Vanderbush*, 47 M.J. at 58 (referring to *United States v. Howard*, 20 M.J. 353 (C.M.A. 1985)).  Under Air Force instructions, the relevant actor in withholding execution of a pending separation is the separation authority.  In the absence of any evidence of intent by the separation authority, or a staff officer acting under his written delegation, to withhold execution of the separation, we find no basis to declare the DD Form 214 invalid.  All the conditions precedent to a lawful discharge were met in this case, and the trial court below did not err in dismissing the Charge and Specification for lack of jurisdiction.

---

[6] "Each part of this instruction authorizing separation tells who is authorized to approve or disapprove the separation . . . . [T]he commander exercising separation authority may designate, in writing, a staff officer to act on the matter.  The authority may not be further delegated."  AFI 36-3208, ¶ 1.1.2.

*Conclusion*

On consideration of the appeal by the United States under Article 62, UCMJ, it is by the court on this 3rd day of March, 2015,

**ORDERED:**

The appeal of the United States under Article 62, UCMJ, is hereby **DENIED**.

Chief Judge ALLRED and Senior Judge HECKER concur.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court