# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Airman Basic FRANKLIN G.U. CRUZ
### United States Air Force

### ACM 38296 (rem)

### 10 December 2015

Sentence adjudged 20 December 2012 by GCM convened at Andersen Air Force Base, Guam.  Military Judge:  Gregory O. Friedland.

Approved Sentence:  Bad-conduct discharge and confinement for 18 months.

Appellate Counsel for Appellant:  Major Nicholas D. Carter and Major Isaac C. Kennen.

Appellate Counsel for the United States:  Major Daniel J. Breen; Major Roberto Ramirez; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT
UPON REMAND

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

A military judge sitting at a general court-martial convicted Appellant, pursuant to his pleas, of desertion, fleeing apprehension, resisting apprehension, use of methamphetamine, assault, child endangerment, and reckless endangerment, in violation of Articles 85, 95, 112a, 128, and 134, UCMJ, 10 U.S.C. §§ 885, 895, 912a, 928, 934.  A panel of officer and enlisted members sentenced him to confinement for 3 years and a bad-conduct discharge.  Pursuant to a pretrial agreement, the convening authority

lowered the confinement to 18 months and approved the remainder of the sentence as adjudged.

During his initial appeal to this court, Appellant argued his record of trial was not substantially verbatim and therefore not reviewable due to its limited discussion of an out-of-court interaction between trial defense counsel and a panel member. Finding no error that materially prejudiced a substantial right of Appellant, we affirmed the approved findings and sentence on 24 July 2014.

On appeal to our superior court, Appellant, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), raised two issues for the first time: (1) whether the military judge erred in finding personal jurisdiction over Appellant and (2) whether Appellant's Fifth Amendment[1] due process rights were violated. On 10 December 2014, our superior court granted review of these issues, set aside our 24 July 2014 decision and remanded the record of trial to us for a new review and consideration of these issues under Article 66(c), UCMJ. *United States v. Cruz*, 74 M.J. 175 (C.A.A.F. 2014).

Having considered the issue of personal jurisdiction over Appellant and his assertions that the Government violated his rights under the Fifth Amendment, and, again having reviewed the entire record, we find no error materially prejudicial to the substantial rights of Appellant and affirm the approved findings and sentence.

*Background*

This case involves Appellant's second court-martial. Appellant's personal jurisdictional argument stems from the interplay between his two courts-martial and his term of service, and he claims his second court-martial was without jurisdiction to try him because it occurred after his enlistment ended.

Appellant's first court-martial involved allegations of drug use. In July 2011, Appellant (then a staff sergeant) failed to provide a urine sample for inspection testing and his commander suspected Appellant had used methamphetamine. Charges regarding these allegations were preferred on 12 September 2011. The charge sheet reflected that Appellant entered a four-year term of service on 28 September 2007, which thus made his Expiration of Term of Service (ETS) approximately 27 September 2011.

The trial defense counsel did not raise a jurisdictional issue at the April 2012 court-martial prior to the findings and sentence being announced and no discussion occurred regarding the state of Appellant's enlistment. At that litigated trial before a military judge, Appellant was convicted of using methamphetamine but acquitted of

---

[1] U.S. Const. amend V.

disobeying the order to provide a sample. He was sentenced to a bad-conduct discharge, 45 days of confinement, and reduction to E-1.

Between June and July 2012, the Government lost all the exhibits from Appellant's court-martial. After the Government was unable to reconstruct some of the exhibits, the military judge held two post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a), sessions in October 2012 where, among other motions, the military judge for the first time considered, and denied, a defense motion to dismiss Appellant's conviction based on a lack of personal jurisdiction.

This defense jurisdictional motion arose after an incident occurred on 27 September 2012 that ultimately led to Appellant's second court-martial. Appellant had been released from confinement from his first court-martial in late May 2012 and initially was informed by his first sergeant that he was on appellate leave and thus did not need to report to work. He therefore returned to his home in the local area. In early September 2012, however, Appellant's first sergeant informed him that he needed to return to duty. After Appellant stopped reporting to work after several days, his unit officially designated him a deserter. The following day, gate guards attempted to stop Appellant from leaving base. He responded by driving his vehicle into concrete barriers and injuring two guards. Appellant fled from law enforcement but ultimately was apprehended. This incident led to Appellant's second court-martial.

Appellant's trial defense counsel learned certain information about Appellant's military status during a pretrial confinement hearing following this incident, which then led the trial defense counsel to contend Appellant had actually not been subject to the jurisdiction of his first court-martial. Following an evidentiary hearing, the military judge denied the defense motion on 22 October 2012, concluding jurisdiction over Appellant had attached when the initial charges were preferred on 12 September 2011 and that he remained subject to jurisdiction because his ETS had thereafter been extended and he had not received a discharge certificate or final accounting of pay.

On the same day as the military judge's ruling, charges were preferred regarding the 27 September 2012 incident and related offenses. The court-martial for these charges took place on 18–20 December 2012. Meanwhile, on 14 December 2012, the lack of a complete record of trial had led the convening authority to disapprove the bad-conduct discharge that had been adjudged at the first court-martial.

Prior to entering pleas at his second court-martial before a new military judge, Appellant again raised a motion to dismiss the charges based on lack of personal jurisdiction. The military judge denied the motion, finding Appellant's ETS had been adjusted to 27 January 2013 and that he had not been outprocessed or issued separation orders. Appellant then pled guilty to desertion, fleeing and resisting apprehension, using methamphetamine, assault, child endangerment, and reckless endangerment.

During his initial appeal to this court, Appellant did not raise the jurisdictional issue. His case has now been returned to this court to address whether the military judge at the second court-martial abused his discretion when he ruled there was personal jurisdiction over Appellant and whether Appellant's Fifth Amendment due process rights were violated when he was not discharged at the expiration of his ETS.[2]

*Jurisdiction*

We review questions of jurisdiction de novo. *United States v. Kuemmerle*, 67 M.J. 141, 143 (C.A.A.F. 2009). "When an accused contests personal jurisdiction on appeal, we review that question of law *de novo*, accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported in the record." *United States v. Hart*, 66 M.J. 273, 276 (C.A.A.F. 2008) (quoting *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000)).

Military jurisdiction over a person continues as long as military status exists. *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006); *Solorio v. United States*, 483 U.S. 435, 439 (1987) (stating that jurisdiction of a court-martial depends solely on the accused's status as a member of the armed forces). "It is black letter law that in personam jurisdiction over a military person is lost upon his discharge from the service, absent some saving circumstance or statutory authorization." *United States v. Howard*, 20 M.J. 353, 354 (C.M.A. 1985).

The mere expiration of a period of enlistment, however, does not automatically equate to a discharge or alter an individual's status under the UCMJ. *United States v. Hutchins*, 4 M.J. 190, 191 (C.M.A. 1978). Instead, an ETS discharge is effectuated when there has been delivery of a valid discharge certificate and a final accounting of pay. *Webb v. United States*, 67 M.J. 765, 771 (A.F. Ct. Crim. App. 2009); *see also* 10 U.S.C. § 1168(a) ("A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative."); Air Force Instruction (AFI) 36-3208, *Administrative Separation of Airmen*, ¶ 2.1.1 (9 July 2004) (incorporating changes through 23 June 2015) ("[S]eparation [of Airmen on date of ETS] is not automatic. They are members of the Air Force until they are separated by administrative action.").

Furthermore, if an individual commits an offense before his official discharge and the military initiates "action with a view to trial," court-martial jurisdiction attaches and the individual may thereafter be retained in the service "for all purposes of trial, sentence, and punishment, notwithstanding the expiration of that person's term of service." Rule for Courts-Martial (R.C.M.) 202(c)(1); R.C.M. 202(c)(1), Discussion ("Once court-martial jurisdiction attaches, it continues throughout the trial and appellate process, and

---

[2] On remand, these issues were not raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

for purposes of punishment.") Such an individual "may be held on active duty over objection pending disposition of any offense for which held and shall remain subject to the [UCMJ] during the entire period." R.C.M. 202(c)(1); *see also Smith v. Vanderbush*, 47 M.J. 56, 57–58 (C.A.A.F. 1997) (holding the military's "authority to retain servicemembers past their period of obligated service for purposes of trial by court-martial is a longstanding feature of military law" and a member does not have an unconditional right to be discharged upon his ETS); Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1) (stating the armed forces have jurisdiction over military personnel "awaiting discharge after expiration of their terms of enlistment.")

The military judge at Appellant's first court-martial found UCMJ jurisdiction attached on 12 September 2011 when the original charges were preferred. At that point, Appellant was still within his enlistment period, which was due to expire on 27 September 2011. Therefore, pursuant to R.C.M. 202(c)(1), court-martial jurisdiction attached at preferral and Appellant could then be retained in the Air Force past his upcoming ETS, and through his April 2012 trial and the convening authority's 14 December 2012 action in the case.[3] *See* R.C.M. 202(c)(2) ("Actions by which court-martial jurisdiction attaches include . . . preferral of charges."); *United States v. Davis*, 63 M.J. 171, 177 (C.A.A.F. 2006) ("Upon trial and conviction, and a sentence subject to appellate review approved by the convening authority, jurisdiction over [the accused is] fixed for purposes of appeal . . . ."). Once those charges were preferred, Appellant could not be administratively discharged until the UCMJ action was complete. *See* AFI 36-3208, ¶ 1.9.

In order for such a retained member to receive pay after his original ETS has passed, the Air Force adjusts the member's ETS/date of separation (DOS) when requested to do so by the staff judge advocate. The Government's disjointed efforts to accomplish these adjustments created the issue raised by Appellant during this appeal.[4]

---

[3] On 21 May 2015, Appellant filed a petition for extraordinary relief with this court in relation to certain alleged defects in his first trial. Because his first trial did not result in an approved sentence of a punitive discharge or confinement for a year or more, and the case was not referred to this court by the Judge Advocate General pursuant to Article 69(d)(2), UCMJ, we lacked jurisdiction to hear his petition. *See United States v. Arness*, 74 M.J. 441, 443 (C.A.A.F. 2015).

[4] There is no paperwork indicating how Appellant's Expiration of Term of Service (ETS) was initially moved from 27 September 2011. Then, on 22 February 2012, the staff judge advocate sent a memorandum to the Air Force Personnel Center (AFPC), requesting an involuntary extension of Appellant's ETS for 90 days "in order to complete the court-martial action." Based on other information in the record, it appears this memorandum was requesting an ETS extension through 27 April 2012. This memorandum cited to paragraph 2.4 of Air Force Instruction (AFI) 36-3208, *Administrative Separation of Airmen* (9 July 2004) (incorporating changes through 23 June 2015), which "authorizes the retention of airmen beyond ETS in anticipation of the preferring of charges." By this point, however, charges had already been preferred and this paragraph of the AFI was therefore inapplicable. Furthermore, no such request was required in order to retain Appellant on active duty through his court-martial and any subsequent punishment and/or appeal. *See* Rule for Courts-Martial 202(c)(1) and Discussion. On 17 and 18 September 2012, the staff judge advocate sent four memoranda to AFPC requesting retroactive involuntary extensions on active duty. These memoranda asked for four 90-day extensions past 1 June 2012, 27 July 2012, 29 August 2012, and 17 September 2012.

Ultimately, however, these efforts are irrelevant as to whether there was personal jurisdiction to try Appellant at his second court-martial.

While Appellant remained subject to court-martial jurisdiction based on his first conviction, he was released from confinement on 21 May 2012. By this time, his ETS/DOS had been adjusted to 27 July 2012 and he continued to receive pay until that date.[5]

After he was informed by his first sergeant that he was on appellate leave and not required to report for duty, Appellant returned to his home in the local area. By early September 2012, the legal office became aware Appellant had not been served with appellate leave paperwork and that he therefore should have returned to duty after he left confinement. *See* AFI 51-201, ¶¶ 9.38.2, 9.38.6. Appellant was then ordered to report to work. After working for several days, Appellant stopped showing up and was ultimately declared a deserter. Later that month, he was involved in the incident that injured two guards and ended in his apprehension. He was placed in pretrial confinement on that same day.

For this course of conduct, Appellant was charged on 22 October 2012 with desertion, fleeing and resisting apprehension, using methamphetamine, child endangerment, and reckless endangerment. At the time of this misconduct and when these new charges were preferred, Appellant's first court-martial was still not finalized and the convening authority had not taken action in that case. Appellant was thus still held on active duty and subject to the UCMJ pending the disposition of those charges from his first court-martial. *See* R.C.M. 202(c)(1), Discussion. Appellant's ETS/DOS was again adjusted and his pay resumed on 30 October 2012, along with back pay for the time since his pay stopped in July 2012.

On 14 December 2012, the convening authority took action in Appellant's first court-martial, disapproving the adjudged bad-conduct discharge due to the lack of a complete record of trial. Four days later, Appellant's second court-martial began.

At that trial, Appellant raised a motion to dismiss the charges based on lack of personal jurisdiction. He contended that the Government had failed to properly extend his ETS/DOS and that both had passed. He recognized that no discharge certificate had been issued but argued the Government had failed to act within a reasonable time to retain jurisdiction under R.C.M. 202(a) or (c) and thus there was no court-martial jurisdiction over him. *See* R.C.M. 202(a), Discussion ("Court-martial jurisdiction normally continues . . . until a discharge certificate . . . is delivered or until the Government fails to act within a reasonable time after the person objects to continued retention."); R.C.M. 202(c)(1), Discussion ("[A] servicemember is subject to court-

---

[5] Due to a paperwork error, Appellant apparently continued to be paid as an E-5 throughout his time in confinement and up until 27 July 2012.

martial jurisdiction until lawfully discharged or, when the servicemember's term of service has expired, the government fails to act within a reasonable time on objection by the servicemember to continued retention.").

The military judge denied the defense motion, finding the Government had shown by a preponderance of the evidence that Appellant was subject to military jurisdiction. He found Appellant remained subject to the court-martial jurisdiction that had attached before his first court-martial, no discharge certificate had been issued, and no final accounting of pay had been accomplished.

Here, the evidence is undisputed that there was never a final accounting of Appellant's pay and no discharge certificate was issued. We do not find the military judge's findings of fact to be clearly erroneous, and we agree with his conclusion of law that the military retained continuous jurisdiction over Appellant. The disjointed actions taken by the staff judge advocate to extend Appellant's ETS did not create a gap in that jurisdiction.

*Due Process Violation*

Appellant also contends his Fifth Amendment[6] rights to due process were violated in two ways. First, he argues that he was not provided adequate notice and an opportunity to be heard during the steps taken by the Government to exercise personal jurisdiction over him for his second court-martial. Second, he contends he was denied due process because the panel in his second court-martial was informed that he had been previously convicted at another court-martial.

On the first issue, Appellant argues he had a constitutional liberty interest in being discharged at his ETS and the due process clause therefore prohibits him from being involuntarily extended for court-martial action without notice of the Government's intention and an opportunity to be heard. As we have found Appellant was not unlawfully retained on active duty and had no right to be separated at his ETS, we find no merit to this argument.

As to the second argument, the panel at Appellant's second court-martial was informed about his first court-martial as part of the Government's sentencing case. Appellant's due process argument is predicated on his claim that the Government's failure to compile a complete record of trial was a deprivation of his right to due process. We disagree with that assertion and find no merit in his constitutional argument.

---

[6] U.S. CONST. amend. V.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

ACM 38296 (rem)