James J. SMITH, Colonel, Military Judge, and the United States, Appellant,

v.

Todd A. VANDERBUSH, Sergeant U.S. Army, Appellee.

No. 97–5003.
Crim.App. Misc. 9601265.

U.S. Court of Appeals for the Armed Forces.

Argued April 8, 1997.

Decided Sept. 11, 1997.

Sullivan, J., filed dissenting opinion.

For Appellant: *Major Fred P. Taylor* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak,* and *Captain Chris A. Wendelbo* (on brief).

For Appellee: *Captain Mark A. Bridges* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Michael L. Walters,* and *Major Leslie A. Nepper* (on brief).

*Opinion of the Court*

EFFRON, Judge:

The Judge Advocate General of the Army has certified the following issue concerning the decision of the Court of Criminal Appeals, which dismissed charges against Sergeant (SGT) Todd Vanderbush that had been referred to a special court-martial convened in the Republic of Korea by the Commanding General of the 2d Infantry Division:

WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED WHEN IT RULED THAT COURT–MARTIAL JURISDICTION OVER APPELLEE WAS SEVERED BY A DISCHARGE IS-SUED BY A COMMANDER OTHER THAN THE CONVENING AUTHORITY AND AFTER PROPER ARRAIGN-

MENT BUT WITHOUT THE WITH-
DRAWAL OF CHARGES OR OTHER
ACTION BY ANY COMPETENT CON-
VENING AUTHORITY.

We conclude that the decision of the Court of Criminal Appeals dismissing the charges was correct.

## I

Charges against SGT Vanderbush were preferred on May 2, 1996, and were referred to a special court-martial on May 14. He was arraigned on May 30, and a session under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), was held on June 5, at which time the case was set for trial on June 26. While these military justice actions were proceeding through court-martial channels, personnel officials on May 20 initiated administrative procedures to separate SGT Vanderbush from the Army on June 20, 1996, upon the expiration of his term of service (ETS).

The Army has a regulatory procedure known as "flagging" that provides for suspension of favorable personnel actions—such as an ETS discharge—in specified circumstances, including pendency of court-martial proceedings.* SGT Vanderbush's civilian supervisor, who was concerned about the inconsistency between the proposed ETS discharge and the pending court-martial action, brought the ETS out-processing orders to the office of the commander who had preferred the court-martial charges. Despite this notice of an impending administrative discharge, the commander took no action, such as flagging SGT Vanderbush, to preclude his discharge from military service.

SGT Vanderbush was administratively processed for ETS discharge in accordance with standard Army procedures, including computation of final pay and authorization for disbursement of that pay by mail. An official empowered to authorize an unconditional ETS discharge approved his discharge, and a discharge certificate was delivered to him on June 14, 1996. On June 15, SGT Vanderbush returned to the United States, using a government-purchased airline ticket.

On June 24, 1996, the court-martial reconvened in SGT Vanderbush's absence. Trial defense counsel moved to dismiss all charges based upon lack of jurisdiction, citing the fact that an authorized Army official had discharged SGT Vanderbush from military service. The military judge denied the motion on the following grounds:

Once charges were preferred and court-martial jurisdiction had attached, the accused was not eligible to be discharged until action on the charges (trial, sentence, and appellate review or dismissal of the charges) was completed by lawful authority. Actions taken to the contrary were without actual authority and do not terminate jurisdiction.

The military judge cited no statutory or regulatory provisions for the proposition that SGT Vanderbush "was not eligible to be discharged" or that his discharge was "without actual authority."

SGT Vanderbush subsequently filed with the Court of Criminal Appeals a Petition for Extraordinary Relief in the Nature of a Writ of Prohibition, requesting dismissal of the charges based upon lack of jurisdiction in view of his unconditional discharge from the Army. On November 13, 1996, the Court of Criminal Appeals granted his petition in an opinion that contains an extensive review of the applicable statutes, regulations, and judicial precedents. 45 MJ 590, 598. The court dismissed the charges without prejudice, making it clear that the charges could be preferred again should SGT Vanderbush subsequently be convicted of obtaining his discharge by fraud or should jurisdiction otherwise be established under Article 3, UCMJ, 10 USC § 803. The Judge Advocate General of the Army filed his certificate for review with our Court on February 6, 1997.

## II

■ As a general matter, members of the armed forces do not have an unconditional right to be discharged upon their ETS. The

---

* See Army Regulation 600–8–2, Suspension of Favorable Personnel Actions (Flags)(1 Mar 88).

authority to retain servicemembers past their period of obligated service for purposes of trial by court-martial is a longstanding feature of military law. As this Court observed in *United States v. Douse*, 12 MJ 473, 476 (1982) (citations omitted):

> In *In re Grimley*, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890), the Supreme Court noted that enlistment in an armed force is more than a contract obligation; it creates a status. That status does not end *eo instanti* on "expiration of the regular period of enlistment." Continuation of the status continues amenability to the Uniform Code and trial by court-martial despite expiration of the term of enlistment.

In his oft-cited treatise on military law, Colonel Winthrop noted:

> It has further been held, and is now settled law, in regard to military offenders in general, that if the military jurisdiction has once duly *attached* to [soldiers] previous to the date of the termination of their legal period of service, they may be brought to trial by court-martial after that date, *their discharge being meanwhile withheld.*

W. Winthrop, *Military Law and Precedents* 90 (2d ed. 1920 Reprint)(second emphasis added).

Under Article 2(a)(1) of the Uniform Code of Military Justice, 10 USC § 802(a)(1), the armed forces have jurisdiction over military personnel "awaiting discharge after expiration of their terms of enlistment. . . ." RCM 202(c)(1), Manual for Courts–Martial, United States (1995 ed.), provides that, after jurisdiction over the individual is established, "such jurisdiction shall continue for all purposes of trial, sentence, and punishment, notwithstanding the expiration of that person's term of service. . . ." The same rule also provides that a servicemember *"may be held* on active duty over objection pending disposition of any offense for which held and shall remain subject to the code during the entire period." (Emphasis added.)

■ The Discussion accompanying RCM 202 makes clear that the authority to retain an individual on active duty is discretionary and not self-executing. It states:

> Court-martial jurisdiction exists to try a person *as long as that person occupies a status as a person subject to the code.* . . . Thus, a servicemember is subject to court-martial jurisdiction *until lawfully discharged* or, when the servicemember's term of service has expired, the government fails to act within a reasonable time on objection by the servicemember to continued retention.

(Emphasis added.)

The issue before us, as framed by the Judge Advocate General, does not call into question the authority of the Army to "flag" SGT Vanderbush's records, to withhold action on an ETS discharge, to limit the discharge authority of subordinate officials, or to initiate prosecutions for fraudulent discharges. *Cf. United States v. Reid*, 46 MJ 236 (1997). In this case, for example, the Army could have: (1) "flagged" SGT Vanderbush's records, which would have raised a question as to whether any subsequent discharge was void or voidable; (2) provided regulatory procedures to ensure that no official other than a convening authority (or other designated official) was empowered to issue an administrative discharge to an accused after arraignment; or (3) charged SGT Vanderbush with obtaining a fraudulent discharge.

■ None of the foregoing circumstances is present in this case, which involves an unconditional ETS discharge that was issued by an official whose authority was not limited by Army regulations. Such a discharge became effective upon delivery. *See United States v. Howard*, 20 MJ 353, 354 (CMA 1985). The issue here is not whether the Army had authority under the Constitution, the Uniform Code of Military Justice, or the Manual for Courts–Martial to retain SGT Vanderbush on active duty through the period of trial, sentence, and review. Army officials did have that authority, but, as in *Howard*, they did not do so.

## III

■ With the case in this posture, the issue is whether court-martial jurisdiction,

once initiated, continues despite an otherwise valid administrative discharge issued prior to adjudication of findings and sentence. As we recently observed in *Reid*, 46 MJ at 238:

Both the Supreme Court of the United States and this Court have recognized the sensitivity of constitutional and statutory concerns relating to court-martial jurisdiction over civilians. *See, e.g., United States ex rel. Toth v. Quarles*, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955); *Wickham v. Hall*, 12 MJ 145 (CMA 1981) (3 opinions). Within constitutional parameters, the power to exercise court-martial jurisdiction is a matter governed by statute. With certain narrow exceptions ..., a court-martial does not have jurisdiction to try civilians, including former servicemembers. *Toth v. Quarles, supra.* A lawful discharge from military service normally terminates the constitutional and statutory power of a court-martial to try such a person, even for offenses allegedly committed prior to the discharge.

In the face of SGT Vanderbush's unconditional discharge, the Government urges that we apply the concept of "continuing jurisdiction" to sustain court-martial jurisdiction over his pre-discharge offenses. Under the Government's theory of continuing jurisdiction, once the service takes action with a "view to trial" under RCM 202(c)(1), at least in terms of arraignment, the issuance of an administrative discharge would not divest a court-martial of jurisdiction to try a civilian former member of the armed forces. As noted by the Court of Criminal Appeals in an opinion rejecting the Government's position, there are three key principles that courts have followed in considering whether to apply the concept of "continuing jurisdiction" to civilian former members of the armed forces.

The first is that, as a matter of constitutional law, the power of Congress to regulate the land and naval forces, U.S. Const. art. I, § 8, cl. 14, does not authorize extending the concept of continuing jurisdiction "to civilian ex-soldiers who ha[ve] severed all relationship with the military and its institutions." *Toth*, 350 U.S. at 14, 76 S.Ct. at 4. The Court in *Toth* emphasized that "[d]etermin-

ing the scope of the constitutional power of Congress to authorize trial by court-martial presents another instance calling for limitation to '*the least possible power adequate to the end proposed.*'" 350 U.S. at 23, 76 S.Ct. at 8; *see* 45 MJ at 593.

Second, as a matter of statutory interpretation, continuing jurisdiction will not be inferred from broad statutes that do not address expressly the authority to try present and former servicemembers for offenses occurring during a prior period of service. *See United States ex rel. Hirshberg v. Cooke*, 336 U.S. 210, 215, 69 S.Ct. 530, 532–33, 93 L.Ed. 621 (1949); 45 MJ at 593.

Third, the concept of continuing jurisdiction may be applied for the limited purpose of permitting appellate review and execution of the sentence in the case of someone who already was tried and convicted while in a status subject to the UCMJ. *See Carter v. McClaughry*, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236 (1902); *United States v. Montesinos*, 28 MJ 38, 46 (CMA 1989); *United States v. Jackson*, 3 MJ 153 (CMA 1977); *United States v. Speller*, 8 USCMA 363, 366, 24 CMR 173, 176 (1957). In the case before us, we must decide whether this limited recognition of continuing jurisdiction for post-trial matters should be expanded to authorize trial of a civilian former servicemember who has been arraigned prior to discharge. *See* 45 MJ at 594–95.

There is no express statutory authorization for reliance on a pre-discharge arraignment to permit the exercise of court-martial jurisdiction over a person who has been discharged from the armed forces. The closest statutory authority is the power under Article 2(a)(1) to retain a person on active duty—that is, to not discharge the servicemember—beyond ETS. The existence of that express authority casts serious doubt upon any statutory interpretation that would broaden its applicability to cover discharged servicemembers. *See Toth v. Quarles* and *Hirshberg v. Cooke*, both *supra.*

In the absence of statutory authorization, the Government relies on the fact that SGT Vanderbush had been arraigned prior to discharge. Arraignment alone, however, is not

sufficient as a matter of law to mandate continuation of court-martial jurisdiction throughout trial. Administrative discharges, whether in lieu of courts-martial or for other reasons, are a routine part of military life and may occur both before and after court-martial jurisdiction attaches. The Government does not contend that military authorities are precluded from issuing such discharges once a trial has begun.

The Government also suggests, however, that a discharge issued by anyone other than the convening authority should be ignored. It has cited no authority for the proposition that an administrative discharge may not be issued after trial starts by an official other than the convening authority, nor has the Government cited any authority for the proposition that Army regulations withheld discharge authority from the specific official who issued the discharge certificate to SGT Vanderbush. The Court of Criminal Appeals, in a careful and persuasive opinion, reviewed in detail the applicable regulation, Army Regulation (AR) 635–200, Enlisted Personnel (17 Oct 1990), and concluded "as a matter of law and regulation that arraignment by court-martial does not operate automatically either to restrict a soldier's eligibility for ETS discharge or to limit the actual authority of a properly appointed discharge official to issue a valid ETS discharge." The court further held that SGT Vanderbush "remained eligible for discharge, and the discharge authority had actual authority under Army regulations to unconditionally discharge the petitioner." 45 MJ at 598. The reasoning of the court below is persuasive.

## IV

Our dissenting colleague cites with approval Judge Russell's dissent in the court below, which relied on paragraph 1–24b of AR 635–200 (administrative discharge of enlisted personnel).

It is noteworthy that despite reliance of the dissent below on paragraph 1–24b, the Government subsequently filed a brief before this Court that made no mention of that regulation. While we are not bound either by concessions or omissions in the Government's brief, the fact that the Government chose not to rely on a favorable interpretation of its own regulation suggested by the dissent below provides a strong indication that the interpretation offered by the dissent is not correct.

The primary flaw in the dissent's reliance on paragraph 1–24b is that the provision does not fall within the portions of the regulation generally applicable to all administrative separations. Paragraph 1–24b falls instead within Section IV of the regulation, which applies to "SEPARATION AFTER EXPIRATION OF TERM OF SERVICE/PERIOD OF ACTIVE DUTY/ACTIVE DUTY TRAINING"—circumstances not present in the case of SGT Vanderbush, who was separated upon, not after, his ETS.

The dissent also fails to address the text of paragraph 1–33 of the regulation, which describes paragraph 1–24 as applying to soldiers who "are retained" in service—a circumstance not applicable in this case. We also note that paragraph 4–2k of Chapter IV of the regulation, which governs "SEPARATION FOR EXPIRATION OF SERVICE OBLIGATION," establishes a very limited withholding of discharge authority, providing only that the "separation authority delegated to commanders by this regulation will not include the authority to discharge a soldier *under court-martial sentence to an unsuspended dishonorable or bad conduct discharge* before appellate review is complete." (Emphasis added.) There is no similar withholding of delegated-discharge authority during the period before a sentence is adjudged.

The Government's decision to exclude reference to AR 635–200 from its brief is understandable, since the basis for holding a soldier past ETS is not AR 635–200, but AR 600–8–2, which requires an affirmative act—flagging—to hold a servicemember beyond ETS. The requirement for flagging is not merely a technicality; it reflects the Army's strong interest in requiring a definitive action as a condition precedent to retaining a member in service, because retention has specific consequences in terms of end-strength accountability and governmental lia-

bility for matters such as pay, allowances, and medical benefits.

If the Government believed that an Army regulation precluded discharge of SGT Vanderbush, its brief surely would have cited such a regulation and provided an authoritative interpretation. Yet, not only did the Government fail to provide such an interpretation, but also the certification of the case made it clear that the issue before us involves a soldier who had "a discharge issued by a commander other than the convening authority." The Judge Advocate General did not certify, and the Government does not claim, that SGT Vanderbush's discharge violated Army regulations. The sole issue before us is whether the concept of "continuing jurisdiction" should be extended to permit trial of a soldier in SGT Vanderbush's circumstances who has been discharged.

## V

Given the admonition of the Supreme Court in *Toth* that jurisdiction over former servicemembers calls for exercise of "the least possible power adequate to the end proposed," 350 U.S. at 23, 76 S.Ct. at 8, we decline to extend the concept of "continuing jurisdiction" to include the authority to try civilian former servicemembers. The Uniform Code of Military Justice provides broad authority to retain servicemembers on active duty past ETS for trial by court-martial. If this authority is deemed inadequate by Executive Branch officials, the responsibility for considering whether jurisdiction should be extended to cover civilian former servicemembers is vested in Congress. We express no view, in the absence of a specific statute, as to the constitutionality of any such provision.

Existing regulations also provide broad administrative authority for commanders to identify servicemembers facing trial by court-martial and to withhold favorable actions, such as ETS discharges, until court-martial actions are completed. We have no reason to believe that the circumstances of this case, reflecting apparently contradictory actions by different commanders, represent a significant or recurring pattern. To the ex-

tent this case suggests a need either to clarify the responsibility of convening authorities and other officials to flag records or to withhold discharge authority from certain officials other than convening authorities, the responsibility for amending AR 635–200 or taking other appropriate, corrective action rests with the Secretary of the Army.

## VI

The certified question is answered in the negative.

The decision of the United States Army Court of Criminal Appeals dismissing the Charges is affirmed.

Chief Judge COX and Judges CRAWFORD and GIERKE concur.

SULLIVAN, Judge (dissenting):

Todd Vanderbush appears to know his way around the paperwork world of the U.S. Army. This knowledge was very handy to him, especially once he got into trouble. Vanderbush had two episodes of behavior while assigned to Korea which resulted in his being charged with various crimes including disrespect to superior officers (using the words "punk bitch" and "black bastard"); willful disobedience of lawful orders; resisting apprehension; using a provoking word; striking the chests of military policemen attempting to subdue him; choking a Korean female and soliciting sex from her; and being drunk and disorderly, in violation of Articles 89, 90, 95, 117, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 889, 890, 895, 917, 928, and 934, respectively. On May 2, 1996, charges were preferred against him. On May 14, 1996, the charges were referred to a special court-martial empowered to adjudge a discharge. After service of the charges, Vanderbush was arraigned on May 30. The defense requested a delay at that court-martial hearing which the judge granted. On June 5, 1996, another hearing was held. Again, delay was granted to the defense with the trial being set for June 26, 1996. *On June 14, 1996, Vanderbush, without disclosing his on-going court-martial, handcarried his clearance forms through all*

*the required stops and the next day left Korea and the U.S. Army.* Or so he thought.

It appears Todd Vanderbush viewed the Army as a huge bureaucracy with a gavel in one hand (his court-martial) and a discharge stamp (his freedom) in the other hand. Vanderbush (already arraigned before a court-martial) merely became the master of his fate and decided to outprocess himself with the discharge-stamp hand of the Army. This can happen because, too often, one hand of the Army does not know what the other is doing, especially in Vanderbush's case where he was sometimes in two commands at the same time (*i.e.,* the 2d Infantry Division and 8th Army–Korea).

There is no hint that any attorney or any part of the judicial system knowingly gave Vanderbush the breathing room he needed to make his escape from Korea and his on-going court-martial. Only administrative oversights, the confusion of two separate commands, and Vanderbush himself put the judicial system to a test of whether justice will prevail in this case. Before I recite the legal reasons why jurisdiction has put its righteous arms around Todd Vanderbush, I state that my view of this issue would be the same in a simple case of assault as it would be in a more serious case involving intentional double rape-murder.

On pure legal grounds, I disagree with the majority opinion. I would reverse the Court of Criminal Appeals and affirm the military judge. In my view, the majority's wholesale adoption of the opinion of the Court of Criminal Appeals not only ignores our prior decisions but also creates new law in derogation of those decisions. Vanderbush's court-martial should continue.

The service regulation at issue in this case, Army Regulation (AR) 635–200, Enlisted Personnel (17 Oct 1990), states:

**1–24.  When investigation is initiated with view to trial by court-martial or soldier is awaiting trial or result of trial**

a.  A soldier may be retained after his or her term of service has expired when—

(1) An investigation of his or her conduct has been started with a view of trial by court-martial.

(2) Charges have been preferred.

(3) The soldier has been apprehended, arrested, confined, or otherwise restricted by the appropriate military authority. However, if charges have not been preferred, the soldier will not be retained more than 30 days beyond the ETS unless the general court-martial convening authority approves. (*See* para. 1–33.)

b.  *A soldier who is awaiting trial or result of trial by court-martial when he or she would otherwise be eligible for discharge or release from AD [active duty], will not be discharged or released until final disposition of the court-martial charges.*  For effective date of discharge, *see* section VI. Soldiers under sentence to an unsuspended dishonorable or bad-conduct discharge will not be discharged before appellate review is completed, unless so directed by HQDA [Headquarters Department of the Army]. If the soldier is absent without leave at the time appellate review is completed, the punitive discharge may still be carried out.  This paragraph does not apply to soldiers processed for discharge under the provisions of chapter 10.

(Emphasis added.)  Paragraph 1–33 states:

**1–33.  When retained in service awaiting trial or result of trial**

*When soldiers are retained in service per paragraph 1–24, the effective date of his or her discharge or release depends upon the result of the trial or the disposition made of the case.*  Examples are given below.

a.  A soldier who has no lost time to make good under 10 USC 972, who is confined awaiting trial will, if acquitted after ETS, be discharged or released from active duty within 5 days after date of announcement of acquittal.  The soldier will be regarded as having been retained in service for the convenience of the Government.

b.  If convicted and sentenced to either confinement only, or confinement and forfeiture only, a soldier who is confined awaiting trial will be discharged on the adjusted ETS. The adjusted ETS date will be computed by adding to the date of

release from confinement or completion of the *court-martial* case, as applicable, all time lost before and including the original ETS date.

c. A soldier who is retained per paragraph 1–24 with a view to trial by court-martial and court-martial charges are not brought or are disposed of without trial, will be separated within 5 days after the decision is made. The soldier will be regarded as having been retained in service for the convenience of the Government.

(Emphasis added.)

The plain meaning of the language of paragraph 1–24b establishes a regulatory bar to Vanderbush's discharge until his court-martial charges have been resolved. Thus, the regulation makes any discharge like the one in this case null and void. The Judge Advocate General of the Army, as noted by the dissenting judge at the Court of Criminal Appeals, has similarly construed this regulation. *See* 45 MJ 590, 600 n. 6 (1996) (Russell, J., dissenting). The lower appellate court's contrary construction of this regulation requiring a flagging action by the general court-martial convening authority before such a prohibition is effective contradicts the plain language of the regulation and is speculation at best.

Even if Vanderbush was validly discharged, our case law construing applicable statutes and regulations permits his court-martial because he was arraigned prior to this discharge. *United States v. Smith,* 4 MJ 265, 267 (CMA 1978) ("[I]f jurisdiction has attached prior to discharge, it continues until termination of the prosecution."); *United States v. Hutchins,* 4 MJ 190, 191 (CMA 1978); *United States v. Jackson,* 3 MJ 153 (CMA 1977). Erroneous discharges are treated differently by military law from fraudulent discharges and knowing and informed discharges. The majority and the court below blur this distinction and exalt administrative miscues over and above the lawful pursuit of justice. *See generally United States v. Jette,* 25 MJ 16, 19 (CMA 1987). Form (technical violation of administrative "flagging" regulations) should not prevail over the substance of justice (holding Vanderbush accountable in a court of law for criminal charges).

The bottom line is that the majority defers to the "careful and persuasive opinion" of the Court of Criminal Appeals. I disagree and instead would defer to the considered opinions of this Court on erroneous or mistaken discharges and attachment of court-martial jurisdiction. I also find the language of paragraph 1–24b of AR 635–200 more persuasive than the speculative construction of that regulation by the lower court. My view is that the Constitution does not require and Congress did not intend that an erroneously discharged servicemember be immune from court-martial for his military crimes. *See United States v. Batchelder,* 41 MJ 337 (1994) (early delivery of valid but not yet effective discharge does not terminate court-martial jurisdiction); *see also United States v. King,* 42 MJ 79 (1995).

Accordingly, I would answer the certified question in the affirmative. In my view, the alleged discharge of Vanderbush did not deprive his on-going court-martial of jurisdiction to finish his case. Military justice should be allowed to follow its normal course. Sergeant Vanderbush was and is still subject to the jurisdiction of the court-martial convened in Korea.