# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

## No. 201600249

_____

## UNITED STATES OF AMERICA
Appellee

v.

## D'URVILLE A. CHRISTOPHER
Cryptologic Technician (Technical) First Class (E-6), U.S. Navy
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Trial - Colonel Valerie C. Danyluk, USMC;
Resentencing - Captain Bethany L. Payton-O'Brien, JAGC, USN.
Convening Authority: Commandant, Naval District Washington,
Washington, D.C.
Staff Judge Advocate's Recommendation: Commander J.A. Link,
JAGC, USN.
For Appellant: Catherine M. Cherkasky, Esq.; Lieutenant Jacob E.
Meusch, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant Megan P. Marinos, JAGC, USN.

_____

Decided 28 December 2017

_____

Before the court *en banc.*[1]

_____

JONES, J., delivered the opinion of the court, GLASER-ALLEN, C.J.,
MARKS, S.J., SAYEGH, J., and WOODARD, J., concurring.

_____

**This opinion does not serve as binding precedent but may be cited as
persuasive authority under NMCCA Rule of Practice and Procedure
18.2.**

---

[1] HUTCHISON, S.J., PRICE, J., and FULTON, J., took no part in the decision of the
case.

JONES, Judge:

At a contested general court-martial, officer and enlisted members convicted the appellant of three specifications of assault consummated by a battery upon a child and one specification of indecent acts with a child, violations of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928 and 934. The members sentenced the appellant to six years' confinement, reduction to pay grade E-1, and forfeiture of all pay and allowances.

At a post-trial Article 39(a), UCMJ, session, the military judge dismissed two of the Article 128, UCMJ, assault convictions for being outside of the statute of limitations, and granted a mistrial for sentencing. Subsequently, a new panel of officer and enlisted members sentenced the appellant to two years' confinement, reduction to pay grade E-1, and a dishonorable discharge. The convening authority (CA) approved only the two years' confinement and reduction to pay grade E-1 and ordered the sentence executed.

The appellant raises nine original assignments of error (AOEs): (1) the court-martial lacked in-personam jurisdiction over him because he was a retired servicemember; (2) his trial defense team was ineffective in allowing him to plead guilty to a charge that was barred by the statute of limitations;[2] (3) the military judge abused her discretion by not advising the appellant of his right to assert the protection of the statute of limitations prior to her acceptance of his pleas; (4) the military judge abused her discretion by not granting a mistrial for the entire proceedings when the appellant withdrew his guilty plea to an offense the military judge had informed the members he committed; (5) the military judge abused her discretion by not granting a mistrial as to the merits after the members convicted the appellant of two offenses barred by the statute of limitations; (6) the military judge abused her discretion by not granting the defense an expert in forensic child psychology; (7) his conviction for indecent acts with a child is legally and factually insufficient because the members' finding was ambiguous as to whether the offense fell within the statute of limitations; (8) his conviction should be overturned based on the cumulative error doctrine; and (9) the military judge erred in instructing the members that they "must" find him guilty if they were firmly convinced of his guilt.

In a Supplemental Brief, the appellant raises seven additional AOEs: (10) the CA erred in approving his reduction in pay grade; (11) his due process rights were violated when he was involuntarily extended on active duty; (12) the CA's post-trial action contains prejudicial error; (13) the government

---

[2] He later withdrew this plea.

violated the Jenck's Act[3]; (14) the staff judge advocate's recommendation (SJAR) constituted prejudicial error; (15) his conviction for assault consummated by a battery on a child is legally and factually insufficient; and (16) the government violated his rights by withholding from him the record of trial.[4]

We have examined the record of trial and considered the oral argument presented by the parties. We conclude that the court-martial had personal jurisdiction over the appellant, but we find that the appellant's trial defense team was ineffective because they erroneously concluded that the statute of limitations was inapplicable to his case. In our decretal paragraph we set aside the convictions and authorize a rehearing.

## I. BACKGROUND

The appellant had 19 years of active duty service in February 2013 when his step-daughter, EH, reported that he had sexually assaulted her and physically abused her and her two step-siblings from 2000 to 2007. At the time she reported the incidents, EH was on active duty in the U.S. Navy. The Naval Criminal Investigative Service (NCIS) opened an investigation into the charges. As part of their investigation, they assisted EH in making a pretext phone call to the appellant, wherein he admitted he had touched her inappropriately years earlier.

As a result, the appellant's command put him on legal hold in April 2014 and informed him of that status. At this same time, however, the appellant was also processing through the Physical Evaluation Board (PEB) system to determine if he would be medically retired. Despite the command's efforts to prevent it, the appellant received a DD Form 214 (Certificate of Release or Discharge from Active Duty) for medical retirement in June 2014. When the error was identified, the government issued the appellant a DD Form 215 (Correction to DD Form 214), purportedly nullifying the invalid discharge.

After his arraignment, the appellant filed a motion to dismiss all charges, averring that the government lacked personal jurisdiction over him. The military judge denied the motion, and the appellant filed a Petition for Extraordinary Relief in the Nature of a Writ of *Mandamus* with this court

---

[3] 18 U.S.C. § 3500.

[4] AOEs 10-16 are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

seeking relief. We denied the Petition[5] and the appellant then sought relief from the Court of Appeals for the Armed Forces, which also denied relief.[6]

Prior to trial, the appellant pled not guilty to all charges and specifications. But on the eve of trial, he changed his plea to the Additional Charge and its sole specification, indecent acts with a child (EH), by pleading guilty—by exceptions—to the lesser-included offense of assault consummated by a battery upon a child for touching EH's breast and leg. This plea was consistent with what the appellant had admitted during the NCIS pretext phone call. But during the providence inquiry, the appellant maintained the offense occurred in July 2003, not June 2004, as the government had charged. After discussing the issue with the parties, the military judge decided that an 11-month difference in the pleading satisfied the "on or about" language of the specification, and she accepted the appellant's plea.[7]

However, this date difference was significant because effective 24 November 2003 Congress modified Article 43, UCMJ, by extending the statute of limitations for child abuse offenses from 5 years from the date of the offense to the child attaining the age of 25 years.[8] Accordingly, an offense occurring in July 2003 was barred from prosecution by the statute of limitations in 2008.

When the trial began, the military judge informed the members of the appellant's guilty plea to the lesser included offense of assault consummated by battery of EH.[9] However, the recorded providence inquiry was never

---

[5] *Christopher v. United States*, No. 201500066, 2015 CCA LEXIS 151, unpublished op. (N-M. Ct. Crim. App. 21 Apr 2015).

[6] *Christopher v. United States*, 75 M.J. 2 (C.A.A.F. 2015).

[7] *But see*, *United States v. Brown*, 34 M.J. 105 (C.M.A. 1992) (noting that the language "on or about" in a specification generally connotes a time within a few weeks of that date).

[8] National Defense Authorization Act for FY 2004, Pub. L. No. 108-136, Section 551, 117 Stat. 1392, 1481 (2003).

[9] After empaneling the members, the military judge advised them:

> As to the sole Specification under the Additional Charge, the accused has entered a plea of . . . Not Guilty to the sole Specification and its Charge [Indecent Acts with a Child], but Guilty to a lesser-included offense in violation of Article 128, assault consummated by a battery upon a child under 16 with exceptions and substitutions.

> The accused's plea of guilty to this lesser-included offense admits some of the elements of the offense charged in that Specification . . . . These elements are therefore established by the accused's plea without need for further proof.

played for the members and no statements made by the appellant during the inquiry were ever disclosed to the members. Additionally, the military judge never specified that the appellant had pled to the offense occurring in July 2003, vice June 2004 date alleged by the government on the charge sheet.

During EH's testimony, she mentioned, for the first time, that she had sought psychiatric care related to the alleged abuse. There was a pause in the trial as the medical records were reviewed by the judge *in camera*. From this review, it was discovered that EH was also receiving disability compensation from the government for a mental health issue connected with the alleged abuse. The appellant, frustrated with this late disclosure and now aware of a potential financial motive for EH to be untruthful, moved to withdraw his plea and asked for a mistrial. The military judge granted his request to withdraw his plea, but denied the motion for a mistrial. The military judge then instructed the members to merge Specification 1 of Charge II with the sole specification of the Additional Charge,[10] bringing under a single specification all of the indecent acts with a child EH alleged occurred on a certain night in June 2004.[11]

The members convicted the appellant of three specifications of assault consummated by a battery upon a child and one specification of indecent acts

---

. . . .

[T]he accused—by exceptions and substitutions, the accused has pled Guilty, excepting out the language "rubbing her breasts" plural, and substituting the words "grabbing her breast" singular." Record at 436-37.

[10] Prior to the merger, the two specifications read as follows:

Charge II, Specification 1: In that [the appellant] , . . . did, at or near Moreno Valley, California, on or about June 2004, commit an indecent act upon the body of [EH], then 13 years of age and not his wife, by rubbing her vagina over her clothes with his hands, with intent to arouse his own sexual desires, and such conduct was of a nature to bring discredit upon the armed forces.

Additional Charge, Specification: In that [the appellant], . . . did at or near Moreno Valley, California, on or about June 2004, commit an indecent act upon the body of [EH], then 13 years of age and not his wife, by rubbing her breasts and her legs over her clothes with his hand, with intent to arouse his own sexual desires, and such conduct was of a nature to bring discredit upon the armed forces.

Charge Sheet.

[11] EH also alleged sexual misconduct against the appellant that occurred on two different nights, for which the appellant was acquitted. He was also acquitted of other offenses occurring after 23 November 2004.

with a child (EH), violations of Articles 128 and 134, UCMJ. Two of the assault convictions were for actions committed against his natural children in 2000-2001, and the other assault conviction was for strangling EH in 2006. The indecent acts with a child involved touching EH in June 2004.

Sometime after the trial ended, the appellant hired new civilian defense counsel who informed him that three of his four convictions were barred by the statute of limitations. In response, the appellant released both his military counsel and his original civilian defense counsel and filed a motion for a mistrial on the merits. The military judge dismissed with prejudice the two Article 128, UCMJ, violations on his natural children—from 2000-2001—as being outside the statute of limitations. But she refused to dismiss the Article 134, UCMJ, indecent acts against a child charge involving EH and the disputed dates, reasoning that the evidence at trial supported the members' verdict that the incident occurred in 2004. The military judge then declared a mistrial only as to sentencing.

Months later, the appellant was resentenced for the two surviving charges, both involving EH: assault consummated by a battery upon a child for strangling her in 2006 and engaging in indecent acts with her in 2004.

## II. DISCUSSION

We find that the court-martial had personal jurisdiction (AOE 1) and that the appellant received ineffective assistance of counsel (AOE 2). The former finding is necessary, as we authorize a rehearing in our decretal paragraph. We find the remaining AOEs either without merit or rendered moot by the relief ordered in our decretal paragraph.

## A. Court-martial jurisdiction

The appellant asserts that the court-martial lacked personal jurisdiction over him because he was a validly retired servicemember and the CA did not have the power to refer charges against him. We disagree. The appellant never retired because his commanding officer properly placed him on legal hold, and his discharge certificate was issued in error.

We review questions of jurisdiction *de novo. United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012). However, we accept "the military judge's findings of historical facts unless they are clearly erroneous or unsupported in the record." *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000) (citation omitted).

Prior to trial, the military judge rejected the appellant's assertion that there was a lack of personal jurisdiction to prefer charges and denied the appellant's motion to dismiss the charges. The military judge found that the appellant's commanding officer put him on legal hold by issuing him a Page 13 counseling entry, and requiring the Navy Personnel Command to cancel

his disability retirement due to the pending court-martial.[12] Reviewing the record of that motion hearing in our consideration of the appellant's earlier Petition for a Writ of *Mandamus*, this court ratified the military judge's findings of facts. And we do so again.

After we denied the Petition, at trial the appellant filed another motion to dismiss the charges, this time based on improper referral. The appellant alleged that because he was retired, the CA was without authority to refer charges against him to a court-martial without seeking and receiving authorization from the Secretary of the Navy.[13] The military judge again denied the motion, finding that the discharge certificate was only issued because of an administrative failure to input a code that would have flagged the appellant's record and prevented the issuance of the DD 214 Form. After a thorough review, we find, again, that the record supports the military judge's findings of fact and they are not clearly erroneous.

Three elements must be satisfied to effect a valid discharge: 1) delivery of a valid discharge certificate; 2) a final accounting of pay; and 3) completion of the service's "clearing" process. *United States v. Hart*, 66 M.J. 273, 276 (C.A.A.F. 2008) (quoting *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989)). In our case, only the first element is in contention. We find the appellant's discharge certificate was not valid because the commanding officer properly exercised his discretion to place the appellant on legal hold and disciplinary proceedings take precedence over medical retirement processing.

Ordinarily the delivery of a valid discharge certificate serves to terminate court-martial jurisdiction. RULE FOR COURTS-MARTIAL (R.C.M.) 202(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Discussion. However, "[c]ourt-martial jurisdiction attaches over a person when action with a view to trial of that person is taken[,]" R.C.M. 202(c)(1) and courts-martial may try "those awaiting discharge after expiration of their terms of enlistment[,]" Art. 2(a)(1), UCMJ.

---

[12] *Christopher*, 2015 CCA LEXIS 151, at *2-3 . In our opinion, we cited the findings from the military judge's 30 January 2015 "Ruling on Defense Revised Motion to Dismiss for Lack of Personal Jurisdiction," now Appellate Exhibit (AE) XXVII.

[13] "No case of a retired member of the regular component of the Navy . . . not on active duty but entitled to receive pay[] . . . will be referred for trial by court-martial without the prior authorization of the Secretary of the Navy." Manual for the Judge Advocate General, Judge Advocate General Instruction 5800.7D § 0123(a)(1) (15 Mar 2004).

By regulation, commanding officers are permitted to involuntarily extend—or put on legal hold—members of the Navy facing criminal proceedings:

> 12. Involuntary Extension due to Criminal Proceedings. Members may be extended involuntarily beyond their [End of Active Obligated Service] as a result of apprehension, arrest, confinement, investigation, or filing of charges that may result in a trial by court-martial, and execution of any sentence thereof . . . .[14]

It has long been held that investigatory action constitutes sufficient official action to preserve military jurisdiction. *United States v. Lee,* 43 M.J. 794, 797 (N-M. Ct. Crim. App. 1995). We have held that jurisdiction is retained over an appellant when investigatory action commences prior to the erroneous delivery of a discharge certificate where the commander was deprived of making "an informed exercise of discretion" regarding the discharge certificate. *United States v. Harmon*, 60 M.J. 776, 779 (N-M. Ct. Crim. App. 2004), *aff'd*, 63 M.J. 98 (C.A.A.F. 2006). Harmon engaged in an early-morning robbery on the very day his discharge certificate was to be delivered to him. An investigation was immediately opened that morning after his victim positively identified him. However, Harmon's crime was unknown to the command and he was given his discharge certificate later that day. We found that jurisdiction attached because the investigation of serious violations of the UCMJ was initiated and focused on the appellant before delivery of his discharge certificate, and the certificate was delivered without an informed exercise of discretion by the commander. *Id.*

We are mindful that the authority to retain an individual on active duty for trial by court-martial is "discretionary and not self-executing." *Smith v. Vanderbush*, 47 M.J. 56, 58 (C.A.A.F. 1997) (citing R.C.M. 202, Discussion). We are also aware that merely because court-martial jurisdiction has attached, a command is not prohibited from exercising its discretion to issue a lawful discharge, effectively terminating jurisdiction. *Id.* at 60. In *Vanderbush*, our superior court held that the Army lost court-martial jurisdiction over an individual when it lawfully discharged him after court-martial preferral and arraignment but prior to adjudication of findings. *Id.* at 59-61. Key to the *Vanderbush* decision, however, was that the very same commander who preferred the charges against Vanderbush was notified of his pending discharge, yet took no action to prevent it.

Here, the facts are similar to those in *Harmon*, not *Vanderbush*; the discharge certificate was delivered to the appellant without an informed

---

[14] Naval Military Personnel Manual, Art. 1160-050 (Ch-19, 12 Apr 2007).

exercise of discretion by the commander. Unlike the commander in *Vanderbush* who, after being informed of the pending discharge did nothing, the appellant's commander took deliberate action to prevent the appellant's discharge. First, he put the appellant on legal hold prior to the disposition of his PEB case. Second, he issued the appellant a Page 13 counseling entry, clearly explaining to the appellant that he was on legal hold and could not transfer or retire. Third, the commander directed the responsible Personnel Support Detachment (PSD) to flag the appellant's legal hold status in his record. Fourth, when the commander found out a message had been issued to place the appellant in a retired status, he successfully got the message cancelled. These actions all indicate the clear intent and efforts of the commander to keep the appellant on legal hold, and that the PSD delivered the appellant's discharge certificate to him without the commander's informed exercise of discretion. Therefore, the appellant's reliance on *Smith v. Vanderbush* is misplaced.

In *United States v. Engle*, No. 201501044, 2006 CCA LEXIS 115, at *9, unpublished op. (N-M. Ct. Crim. App. 31 May 2006), this court was faced with the same issue we encounter here—whether a DD Form 214 issued in direct contradiction of a commanding officer's earlier imposition of legal hold was valid. Engle's commanding officer decided to prosecute him and issued a letter directing that Engle be placed on legal hold. However, that letter was not entered into the administrative system until after Engle's expiration of term of service date, and Engle received a discharge certificate. We held that Engle's discharge certificate was not sanctioned by his commanding officer— in fact, it was directly contrary to his commanding officer's earlier legal hold notification—and therefore was issued in error. Absent countervailing case law, we decline the appellant's invitation to distinguish his case from *Engle*.

Lastly, in addition to the commander's efforts to keep the appellant on legal hold, Navy regulations also mandate that disciplinary proceedings take precedence over simultaneous processing for medical retirement. "Processing for punitive discharge . . . takes precedence over processing for disability. For cases already being considered at the PEB, once the PEB is formally notified that punitive action has been initiated, disability case processing is immediately suspended pending the outcome of the punitive action."[15] Furthermore,

> [w]henever a member is being processed through the PEB and, subsequently the member is processed for . . . disciplinary proceedings which could result in a punitive discharge, . . . disability evaluation *shall* be suspended and monitored by the

---

[15] Secretary of the Navy Instruction 1850.4E at § 1002(b) (30 Apr 2002).

PEB. . . . The PEB case will remain in suspense pending the outcome of the non-disability proceedings.[16]

We conclude that personal jurisdiction over the appellant did not terminate upon delivery of his discharge certificate. He was never validly retired and the command did not need Secretary of the Navy approval prior to referring charges against him.

## B. Ineffective assistance of counsel

The appellant avers he received ineffective assistance of counsel when his trial defense team (TDT) erroneously advised him that the five-year statute of limitations was inapplicable to his case. We agree.

We review claims of ineffective assistance of counsel *de novo. United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). The appellant must clear "a high bar" to prevail on such a claim. *Id.* at 371. He must show: (1) that his counsel's performance was deficient and (2) that, but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

### 1. Counsel's performance was deficient

The first *Strickland* prong requires the appellant to show that counsel's performance fell below an objective standard of reasonableness, indicating that counsel was not functioning as counsel within the meaning of the Sixth Amendment. *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002). Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate representation. *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

Prior to trial, the appellant's military defense counsel recognized that there may be a possible statute of limitations issue for several of the charged offenses. But, after researching the issue, he came to the erroneous conclusion that the five-year statute of limitations did not apply. The military defense counsel then incorrectly advised the appellant that he had no statute of limitations defense to events occurring prior to 24 November 2003. In fact, two of the charges for which the members later convicted the appellant occurred between June 2000 and December 2001 and were barred by the applicable five-year statute of limitations.

The appellant later hired civilian counsel who also identified that there might be a statute of limitations problem with the charged offenses. However,

---

[16] *Id.* at § 3403(a) (emphasis added). The only exception is if the Director, Navy Council of Personnel Boards or the Assistant Secretary of the Navy (Manpower and Reserve Affairs) direct otherwise. *Id.* at § 3403(c). In this case they did not.

the civilian counsel either relied on the military counsel's incorrect advice or came to the same faulty conclusion regarding which statute of limitations applied to appellant's charged offenses. Accordingly, the defense filed no motions to dismiss the two charges from 2000-2001 that were beyond the five-year statute of limitations.

In spite of the military defense counsel's identification of the potential statute of limitations issue upon reviewing the appellant's case, his inadequate research and misapplication of the law resulted in the appellant receiving erroneous advice. The military defense counsel explained his actions in a post-trial affidavit:

> I believed the issue was clearly and definitely addressed in the analysis section of the [MANUAL FOR COURTS-MARTIAL] (2012 ed.), page A21-57, which indicated that the new statute of limitations permitted unexpired periods to be extended by the new statute, but that it does not allow the statute to renew an expired period. The analysis cited the case of *United States v. Ratliff*, 65 M.J. 806 [(N-M. Ct. Crim. App. 2007)] which held that "extensions of the Article 43, UCMJ, statute of limitations apply to any child abuse offense for which the original statutory period had not expired when the extensions were enacted." I pulled *Ratliff* from the [Navy-Marine Corps Court of Criminal Appeals] website, but I failed to Shepardize[17] the case. Based on this research I concluded that there was no statute of limitation bar to prosecution of [the appellant] in the particular case.
>
> As a result of my research on the issue I informed [the appellant] that the statute of limitations was extended, and that there was no bar to prosecution of any charges against him. Accordingly, I filed no motions on his behalf regarding the statute of limitations, nor did I explain to [the appellant] the importance of the year in which events occurred.
>
> . . . .
>
> Prior to trial [the appellant] hired . . . civilian defense counsel . . . [who] immediately identified the statute of limitations issue and I informed him that I had researched it

---

[17] "Shepardize. n. a method of locating reports of appeals decisions based on prior precedents from Shepard's Citations, books which list the volume and page number of published reports of every appeals court decision which cites a previously decided case or a statute." THEFREEDICTIONARY.COM, https://legal-dictionary. thefreedictionary.com/Shepardize (last visited 26 Dec 2017).

and explained to him the guidance that was in the analysis section of the [MANUAL FOR COURTS-MARTIAL, (2012 ed.)].[18]

The TDT relied on our 2007 decision in *Ratliff*, where we held that the changes to Article 43, UCMJ, applied retroactively. In that opinion, however, we noted that our superior court was, at the same time, reviewing an Army case with the identical issue. Four months after our decision in *Ratliff*, the Court of Appeals for the Armed Forces decided that changes to Article 43, UCMJ, did not apply retroactively. *United States v. Lopez de Victoria*, 66 M.J. 67, 74 (C.A.A.F. 2008). Our decision in Ratliff was reversed on 2 July 2008. *United States v. Ratliff*, 67 M.J. 2 (C.A.A.F. 2009) (summary disposition). The TDT failed to exercise standard due diligence by ensuring that a six-year-old case was still good law, despite the dispositive nature of the issue.

At trial, the appellant elected to plead guilty to the lesser included offense of assault consummated by a battery on EH for grabbing her breast and rubbing her legs over her clothes. However, during the providence inquiry on the assault charge, the appellant maintained under oath that he inappropriately touched EH in July 2003, not June 2004 as the government had charged. No one at trial—including the counsel, the military judge, and the accused—understood the true significance of the date dispute. Accepting that the offense occurred in July 2003 meant the appellant had a valid statute of limitations defense, as this date was prior to the 24 November 2003 change in the law.[19] The appellant's insistence during the providence inquiry that the event occurred in July 2003 appears to have surprised the defense counsel. Regardless, having already erroneously determined that the statute of limitations offered no protection to their client for charges as early as 2000-2001, the TDT failed to act on the new information.

The government concedes the first *Strickland* prong; the appellant's TDT failed to function as counsel within the meaning of the Sixth Amendment. We concur. In cases where counsel conduct a thorough investigation into the law, we do not second guess their subsequent strategic or tactical decisions.[20] But that was not done here, and "[f]amiliarity with the facts and applicable law are fundamental responsibilities of defense counsel." *United States v. Davis*, 60 M.J. 469, 475, (C.A.A.F. 2005) (citations omitted). The TDT's failure to fully research the law and properly advise the appellant on the statute of limitations' complete bar to two of the four offenses for which he was

---

[18] Appellant's Brief of 23 Jan 2017, Appendix 2 at 2-3.

[19] *See* note 8, supra.

[20] *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .")

convicted—and the possibility that it could apply to a third offense depending on whether the offense occurred in 2003 or 2004—fell below the minimum acceptable level of competence demanded of attorneys and was a fundamental failure.

*2. A reasonable probability the result would have been different*

The second *Strickland* prong requires a showing of prejudice resulting from counsel's deficient performance. *Strickland*, 466 U.S. at 691. The appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *See also United States v. Quick*, 59 M.J. 383, 386-87 (C.A.A.F. 2004) ([T]he appropriate test for prejudice is "whether there is a reasonable probability that, but for counsel's error, there would have been a different result.") (citation omitted)). Such prejudice must result in the denial "of a fair trial," resulting in "a trial whose result is unreliable." *United States v. Dewrell*, 55 M.J. 131, 133 (C.A.A.F. 2001) (citation and internal quotation marks omitted).

We are confident that awareness of the correct statute of limitations would have so altered the progress of this trial and affected the appellant's decisions that there is a reasonable probability there would have been a different result.

First, the TDT's trial strategy, decisions, and tactics were fundamentally flawed from the beginning because the TDT never filed a motion prior to trial to dismiss any charges that were outside of the statute of limitations. Clearly, the two assault charges dismissed posttrial would have been dismissed pretrial, prior to the members ever hearing the highly inflammatory evidence on the later dismissed offenses. Additionally, a pretrial motion may also have successfully dismissed the indecent acts charge against EH, given the extensive delay in reporting of the incident and the timeline differences between her and the appellant's accounts.

Second, the TDT would not have advised their client to plead guilty to the lesser included offense of assault on EH.[21] This error infected the entire

---

[21] In turn, the military judge would never have notified the members that the appellant pled guilty as charged, to conduct in June 2004. Even though a plea of guilty is the strongest form of proof under the law, the government argues that the appellant was not prejudiced because, ultimately, the military judge told the members to disregard the appellant's guilty plea. We do presume that, absent evidence to the contrary, the members follow the instructions of the military judge. *United States v. Jenkins*, 54 M.J. 12, 20 (C.A.A.F. 2000). But neither the military judge, the trial counsel, nor the TDT ever clarified the dispute between the 2003-2004 dates or explained the importance of those dates to the members.

defense theme and theory of the case. Shortly after the military judge informed the members of the appellant's plea, the TDT conceded guilt in their opening statement.

> What really happened that night, what the accused has already pled guilty to, . . . is he did grab her breast, he was wrong, *it's a crime. He deserves to be punished* for what he did. He pled guilty to what he did. He grabbed her breast. It wasn't an inadvertent touch . . . . It was wrong, he shouldn't have done it. He felt bad, he never did it again. That is what the evidence will show you happened.[22]

The TDT's closing argument—made after the members were told to disregard the appellant's withdrawn plea—was even more ruinous.

> Let's cut to the chase. At the end of the day or sometime on Monday morning, *you're going to come back with a finding of guilty*. [The appellant] grabbed his stepdaughter's breasts. The testimony is clear, it happened. . . . It was wrong, he should not have done it and *he will be punished*, and you will punish him, that much is clear.[23]

Third, the appellant was divested of the opportunity to make an informed choice as to whether to testify and claim the events occurred outside of the statute of limitations. We struggle to think of a more important trial decision an accused may make in a criminal trial than the decision of whether to take the stand and testify on his own behalf.[24] The most damning evidence against the appellant was the pretext phone call wherein he admitted to EH that he had touched her inappropriately, and then apologized. Had the appellant been properly advised on the statute of limitations, he could have testified, acknowledged his admissions on the phone call, but explained that any inappropriate touching had occurred in July 2003, vice June 2004 as charged. The military judge would have given an instruction to the members regarding the effective date of the change in the statute of limitations. Then the TDT could have argued to the members that even if the appellant did

---

[22] Record at 447 (emphasis added).

[23] *Id.* at 1325 (emphasis added).

[24] The appellant's right to testify is a fundamental right, *see Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975), that only he has the ultimate authority to assert or waive. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("It is . . . recognized that the accused has the ultimate authority to make certain  fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, [or] testify in his or her own behalf . . . .) (citations omitted)).

inappropriately touch EH, they must find him not guilty, as a matter of law, as the offense was committed outside the statute of limitations.

Fourth, the cross-examination of EH would have been dramatically different. The TDT would have been laser-focused on the nuances between the July 2003 and June 2004 dates, vice merely highlighting EH's motives to lie and overall untruthfulness. EH testified twice that the indecent acts occurred when she was "12 or 13,"[25] meaning either in 2003 or 2004. The significance of this uncertainty was lost on all trial participants.[26]

Fifth, the appellant was denied the opportunity to present additional evidence regarding the date dispute. The TDT could have presented documentary evidence—such as deployment, housing, or school records—to corroborate the appellant's assertion that the indecent acts occurred in 2003. They could also have called witnesses to testify that events corroborating the incident occurred in 2003 vice 2004.[27] In other words, the members may very well have been without vital information that could have resulted in an acquittal for the appellant on the charge for which he was convicted of—indecent acts on EH.

In *Davis*, 60 M.J. 469, the defense counsel formulated a sentencing strategy based upon faulty research that early retirement was available to his client. Our superior court found that the counsel's failure to determine the correct state of the law was unreasonable. They set aside the sentence, concluding there was a reasonable probability there would have been a different result. The appellant's situation is much graver—his TDT's faulty legal advice severely limited his ability to formulate an effective trial strategy to contest the charges on the merits. We conclude that there is a reasonable probability there would have been a different result on the merits in the appellant's case.

Even if we could not find a reasonable probability that the results of trial would be different, the repeated failure to identify the statute of limitations issue through multiple phases of investigation and trial deprives us of confidence the trial was fair and reliable. We cannot have confidence in the outcome of the trial when all of the attorneys involved missed the applicability of such a seminal issue: the officer who preferred the charges;

---

[25] Record at 791, 797.

[26] The importance of the timeline was illustrated when—in the middle of their deliberations—the members asked the military judge if they could have the trial counsel's timeline he had used during his closing argument. AE LXXXIX.

[27] We reject the government's argument that the appellant must show, via affidavit, exactly what evidence he would have presented to rebut EH's 2004 date. Appellee's Brief of 14 Aug 2017 at 31-32.

the officer who swore the charges; the officer who conducted the Article 32, UCMJ, proceeding; the SJA; both trial counsel; the military defense counsel; the civilian defense counsel; and two experienced military judges.[28]

The legal system failed the appellant. It is our judgment, based on the entire record, that the findings and the sentence in this court-martial should not be approved. Arts. 59(a) and 66(c), UCMJ.

### III. CONCLUSION

The findings and sentence are set aside. A rehearing is authorized.

Chief Judge GLASER-ALLEN, Senior Judge MARKS, Judge SAYEGH, and Judge WOODARD concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[28] In particular, the military judge at trial had the affirmative duty to inform the appellant of the applicability of the statute of limitations prior to accepting his guilty plea. *United States v. Thompson*, 59 M.J. 432, 439 (C.A.A.F. 2004) ("The military judge has an affirmative obligation to advise an accused of the right to assert the statute of limitations, and must determine that any waiver of the statute of limitations bar is both knowing and voluntary.") (citing R.C.M. 907(b)(2)(B); *United States v. Moore*, 32 M.J. 170, 173 (C.M.A. 1991); *United States v. Salter*, 20 M.J. 116, 117 (C.M.A. 1985)).